## WEBER v. THE BOARD OF HARBOR COMMISSIONERS.

1. Upon the admission of California into the Union upon equal footing with the original States, absolute property in, and dominion and sovereignty over, all soils under the tidewaters within her limits passed to the State, with the consequent right to dispose of the title to any part of said soils in such manner as she might deem proper, subject only to the paramount right of navigation over the waters, so far as such navigation might be required by the necessities of commerce with foreign nations or among the several States, the regulation of which was vested in the General government.

2. The legislature of California, on the 26th of March, 1851, at its first session after the admission of the State into the Union, passed an act granting to the city of San Francisco for the term of ninety-nine years the use and occupation of portions of the lands covered by the tidewaters of the bay of San Francisco in front of the city, lying within a certain designated line, described according to a map of the city on record in the recorder's office of the county, and declared that the line thus desig-

---

* Benedict's Admiralty, § 549. .            † Id. § 549.

nated should "be and remain a permanent water front" of the city. It also provided that the authorities of the city should keep the space beyond the line, to the distance of five hundred yards, "clear and free from all obstructions whatsoever;" and reserved to the State the right to regulate the construction of wharves and other improvements, so that they should not interfere with the shipping and commercial interests of the bay and harbor. A subsequent act of the legislature, passed on the 1st of May, 1851, authorized the city of San Francisco to construct wharves at the end of all the streets commencing with the bay, the wharves to be made by extending the streets into the bay for a distance not exceeding two hundred yards beyond the line established as the permanent water front of the city; and provided that the space between the wharves, when extended, should remain free from obstructions and be used as public slips for the accommodation and benefit of the general commerce of the city and State. After the passage of these acts the predecessors of the complainant acquired the title of the city, under the grant of the State abovementioned, to lots lying along the line of the said water front, and erected a wharf in front of the lots into the bay:

*Held :*

1st. That the complainant took whatever interest he obtained, in subordination to the control by the city over the space immediately beyond the line of the water front, and the right of the State to regulate the construction of wharves and other improvements; and that he was not a riparian proprietor, having a right to wharf out into the bay.

2d. That the erection of the wharf was an interference with the rightful control of the city over the space occupied by it, and an encroachment upon the soil of the State which she could remove at pleasure. Having the power of removal, the State could, without regard to the existence of the wharf, authorize improvements in the harbor, by the construction of which the use of the wharf would necessarily be destroyed.

3. The statute of limitations of California declares that the people of the State will not sue any person for or in respect of any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless—

1st. Such right or title shall have accrued within ten years before any action or other proceeding for the same shall be commenced; or unless,

2d. The people, or those from whom they claim, shall have received the rents or profits of such real property, or some part thereof, within the space of ten years:

4. The predecessors of the complainant in 1854 erected a wharf, projecting it into the bay of San Francisco, and in 1867 obstructions to its use were made, for which the present suit was brought, the complainant contending among other things that he had acquired a title to the wharf by operation of the above statute. Before ten years had elapsed after the erection of the wharf the legislature passed an act creating a board of harbor commissioners, and directing them to take possession of and hold the water front to the distance of six hundred feet from the estab-

lished front line abovementioned, with the improvements, rights, privileges, franchises, easements, and appurtenances, and to institute suits for the recovery of wharves and the removal of obstructions to the harbor, and generally to hold the property for the construction of wharves, landings, and other improvements intended for the safety and convenience of shipping.  *Held:*

1st. That the words in the statute of limitations; " *shall have accrued,*" are used in the sense of " *shall have existed.*"

2d. That the act creating the board of harbor commissioners rebutted any presumption against the title of the State from the lapse of time, and prevented the complainant from acquiring that title by operation of the statute of limitations.

APPEAL from the Circuit Court for the District of California; in which court one Weber filed a bill against the board of State harbor commissioners of California, to make them abate and remove certain erections made by them on the water front of San Francisco, which he alleged interfered with a wharf rightfully put there by him. The case was thus:

The State of California was admitted into the Union on the 9th of September, 1850. At the first session of its legislature afterwards, namely, on the 26th of March, 1851, an act was passed entitled " An act to provide for the disposition of certain property of the State of California," which granted to the city of San Francisco the use and occupation, for ninety-nine years, of certain lands lying in front of the city covered by the tidewaters of the bay of San Francisco. This act is generally designated in California as " The Beach and Water-Lot Act of 1851." It describes the outer boundary line of the lands according to the survey of the city, and a map or plat of the same on record in the office of the recorder of the county of San Francisco, and in its fourth section declares that this line—

"Shall be and remain a permanent water front of said city, the authorities of which shall keep clear and free from all obstructions whatever the space beyond said line to the distance of five hundred yards therefrom."

And the sixth section provides that—

"Nothing in the act shall be construed as a surrender by the

State of its right to regulate the construction of wharves or other improvements, so that they shall not interfere with the shipping and commercial interests of the bay and harbor of San Francisco."

The permanent water-front thus established is in many places at a great distance from the line of the shore of the bay as that existed at the time California was admitted into the Union. Ships of the largest size then floated at the lowest tide at many points along this line. Such was the case at the point where the wharf of the complainant hereafter mentioned was constructed.

The act abovenamed was followed, on the 1st of May, 1851, by another act, as follows:

"SECTION 1. The city of San Francisco is hereby authorized and empowered to construct wharves at the end of all the streets, commencing with the bay of San Francisco; the wharves to be made by the extension of said streets into the bay, in their present direction, not exceeding two hundred yards beyond the present outside line of the beach and water lots, and the city is authorized to prescribe the rates of wharfage that shall be collected on said wharves, when constructed. The space between said wharves, when they are extended, which is situated outside of the outer line of beach and water-lot property, as defined by the legislature, shall remain free from obstructions and be used as public slips for the accommodation and benefit of the general commerce of the city and State."

In 1853 the predecessors of the complainant acquired the title of the city to certain lots lying along its water front, and being about one hundred and twenty feet in extent. In 1854 they built a platform along and adjoining this front the whole length of the lots, and then constructed a wharf projecting from the centre of the platform into the bay, eighty-four feet long and forty feet wide, leaving a space on each side for the approach and dockage of vessels. From that time until the interference by the defendants, in 1867, the then owners and their successors continued in the uninterrupted possession of the wharf and collected tolls and wharfage for its use.

On the 24th of April, 1863, the legislature of California passed an act entitled " An act to provide for the improvement and protection of the wharves, docks, and water front, in the city and county of San Francisco." It created a board of State harbor commissioners, and by its second section required that they should

" Take possession of and hold all that portion of the bay of San Francisco lying along the water front of said city and county of San Francisco, and adjacent thereto, to the distance of six hundred feet into the waters of said bay, from the line of the water front, as defined by an act of the legislature, approved March 26th, 1851, together with all the improvements, rights, privileges, franchises, easements, and appurtenances connected therewith, or in anywise appertaining thereto, excepting such portions of said water front as may be held by parties under valid leases; and the commissioners shall also take possession and have control of any and all such portions of said water front, with the improvements, rights, privileges, franchises, easements, and appurtenances, as are held under valid leases, as soon as said leases shall respectively expire and become void."

They were also

" Authorized and empowered to institute actions at law or in equity for the possession of any wharf or wharves, or other rights, privileges, franchises, &c., named in this section, or for the recovery of the tolls, dockage, rents, and wharfage thereof; also, for the removal of obstructions, and abatement of any and all nuisances on the water front mentioned in this act, and to prosecute the same to final judgment."

The third section proceeded:

" SECTION 3. The commissioners shall have and hold possession and control of the said water front, with the improvements, rights, privileges, franchises, easements, and appurtenances connected therewith, or in anywise appertaining thereto, for the following purposes and uses:

"*First.* To keep in good repair all the sea-walls, embankments, wharves, piers, landings, and thoroughfares, for the accommodation and benefit of commerce.

"*Second.* To dredge such number of the docks as the commerce of the harbor may require, to a depth that will admit of the easy ingress and egress of the vessels which load and unload at said wharves and piers.

"*Third.* To construct such new wharves, piers, landings, and thoroughfares, at the foot of the streets, as the wants of commerce may require.

"*Fourth.* To construct all works necessary for the protection of wharves, piers, docks, landings, and thoroughfares, and for the safety and convenience of shipping.

"*Fifth.* To provide for the construction, out of the surplus funds growing out of the revenues arising from said wharves, such sea-wall or other structure along the water front of said city and county of San Francisco, as shall, upon accurate surveys made for that purpose, be found to be necessary for the protection of the harbor and water front of said city and county. . .

"*Sixth.* To collect such rents, tolls, wharfage, craneage, and dockage, as may, from time to time, be fixed under the authority of this act, and to disburse and dispose of the revenues arising therefrom as in this act provided."

The twentieth section provided that no person or company should, after the commissioners were qualified, "collect any tolls, wharfage, and dockage, upon any portion of the water front of the city and county of San Francisco," nor "land or ship any goods, wares, or merchandise, or other thing, upon or from any portion of the said water front of said city and county of San Francisco, unless authorized so to do by the said commissioners, excepting such persons or companies as might hold possession of some portion of the property described in this act by valid leases." And it provided that any person violating or offending against the prohibition should be deemed guilty of a misdemeanor, and upon conviction thereof be punished by fine or imprisonment.

The defendants, the harbor commissioners, in 1867 proceeded, under this act, and an act amendatory of and supplementary to it, passed on the 6th of March, 1864, to make improvements in the harbor of San Francisco, intended for its protection and the convenience of shipping, and in the

execution of their works caused piling to be had, and capping and planking on both sides of the complainant's wharf, so as to prevent any approach to it by vessels.   To obtain a decree of the court that the erections thus caused were a nuisance, and to compel the defendants to abate and remove them, the complainants filed the present bill, asserting title to the land upon which the wharf was constructed, and alleging that if any adverse claim to it was made, it was barred under the statute of limitations of the State.

The statute of limitations provides that—

" The people of the State will not sue any person for, or in respect of, any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless—

" *First.* Such right or title shall have accrued within ten years before any action or other proceeding for the same shall be commenced ; or unless,

" *Second.* The people, or those from whom they claim, shall have received the rents or profits of such real property, or some part thereof, within the space of ten years."

The court below dismissed the bill, and from the decree the complainant appealed to this court.

*Messrs. S. Heydenfelt and W. Irvine, for the appellant, argued :*

That the ownership of the land on the water front conferred the right on the owner to wharf out into the bay, so long as he did not obstruct navigation, and that he could not be cut off from the water.*

That the complainant had acquired a perfect title to the wharf by lapse of time and the statute of limitations of the State of California ; as the shore below high-water mark might become private property by prescription ;† and the title to a franchise be acquired and secured by lapse of time and the statute of limitations, as much as a title to land.

---

* Angell on Tidewaters, ch. 6, p. 171 ; Chapman v. Kimball, 9 Connecticut, 41 ; East Haven v. Hemingway, 7 Id. 202 ; Nichols v. Lewis, 15 Id. 137.

† 2 Kent, Lecture 52, p. 427, 3d edition ; Leffingwell v. Warren, 2 Black, 599.

That the establishment of the permanent water front of San Francisco by the act of March 26th, 1851, was a contract between the public and the owners of the property, or those who should afterwards purchase under the grant to the city, and could not be changed, except by the assertion of the rights of eminent domain, and that obstructions could not be authorized without compensation.

That the present case was governed by that of *Yates* v. *Milwaukee*,\* where Miller, J., delivering the opinion of the court, says:

"But whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and among those rights are access to the navigable part of the river from the front of his lot; the right to make a landing, wharf, or pier, for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose, for the protection of the rights of the public, whatever those may be." . . .

"This riparian right is property, and is valuable, and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right which, when once vested, the owner can only be deprived in accordance with established law, and if necessary that it be taken for the public good, upon due compensation."

*Messrs. J. F. Swift and T. P. Ryan, contra,* relied on the statutes of California ceding to the city of San Francisco the title of the State, and the act creating the board of harbor commissioners, and investing them with control of the water front of the city.

Mr. Justice FIELD delivered the opinion of the court.

It is unnecessary for the disposition of this case to question the doctrine, that a riparian proprietor, whose land is bounded by a navigable stream, has the right of access to the navigable part of the stream in front of his land, and to

---

\* 10 Wallace, 497.

construct a wharf or pier projecting into the stream, for his own use, or the use of others, subject to such general rules and regulations as the legislature may prescribe for the protection of the public, as was held in *Yates* v. *Milwaukee.** On the contrary, we recognize the correctness of the doctrine as stated and affirmed in that case. Nor is it necessary to controvert the proposition that in several of the States, by general legislation or immemorial usage, the proprietor, whose land is bounded by the shore of the sea, or of an arm of the sea, possesses a similar right to erect a wharf or pier in front of his land, extending into the waters to the point where they are navigable. In the absence of such legislation or usage, however, the common-law rule would govern the rights of the proprietor, at least in those States where the common law obtains. By that law the title to the shore of the sea, and of the arms of the sea, and in the soils under tidewaters is, in England, in the king, and, in this country, in the State. Any erection thereon without license is, therefore, deemed an encroachment upon the property of the sovereign, or, as it is termed in the language of the law, a *purpresture*, which he may remove at pleasure, whether it tend to obstruct navigation or otherwise.†

But in this case no inquiry as to the rights of a riparian proprietor, by either the common law or local usage or regulation, is needed. The complainant is not the proprietor of any land bordering on the *shore* of the sea, in any proper sense of that term. His land is situated nearly half a mile from what was the shore of the bay of San Francisco, at the time California was admitted into the Union, and over it the water at the lowest tide then flowed at a depth sufficient to float vessels of ordinary size. Although the title to the soil under the tidewaters of the bay was acquired by the United States by cession from Mexico, equally with the title to the upland, they held it only in trust for the future State. Upon the admission of California into the Union upon equal footing with the original States, absolute property in, and do-

---

* 10 Wallace, 497.                    † Angell on Tidewaters, 198, 199.

minion and sovereignty over, all soils under the tidewaters within her limits passed to the State, with the consequent right to dispose of the title to any part of said soils in such manner as she might deem proper, subject only to the paramount right of navigation over the waters, so far as such navigation might be required by the necessities of commerce with foreign nations or among the several States, the regulation of which was vested in the General government.*

Acting upon the rights thus acquired, the legislature of the State, on the 26th of March, 1851, at its first session after the admission, passed an act disposing of portions of the lands covered by the tidewaters of the bay, in front of the city of San Francisco. That act is generally known in the State as the Beach and Water-Lot Act.† It granted to the city, for the term of ninety-nine years, the use and occupation of lands thus covered, with some specified exceptions, lying within a certain designated line, described according to a map of the city on record in the recorder's office of the county, and declared that the line thus designated should "be and remain a permanent water front" of the city. It also provided that the authorities of the city should keep the space beyond the line to the distance of five hundred yards, "clear and free from all obstructions whatsoever;" and reserved to the State the right to regulate the construction of wharves and other improvements, so that they should not interfere with the shipping and commercial interests of the bay and harbor.

A subsequent act of the legislature, passed on the 1st of May, 1851, authorized the city of San Francisco to construct wharves at the end of all the streets commencing with the bay, the wharves to be made by extending the streets into the bay for a distance not exceeding two hundred yards beyond the outside line of the beach and water-lots, the line established as the permanent water front of the city; and

---

* Pollard's Lessee *v.* Hagan, 3 Howard, 212; Mumford *v.* Wardwell, 6 Wallace, 436.

† The act is entitled "An act to provide for the disposition of certain property of the State of California." Laws of California for 1851, p. 307.

provided that the space between the wharves, when extended, should remain free from obstructions, and be used as public slips for the accommodation and benefit of the general commerce of the city and State.

It was after the passage of these acts that the predecessors. of the complainant acquired all the title to the lots which he holds; and they took whatever interest they obtained in subordination to the control by the city over the space immediately beyond the line of the water front, and the right of the State to regulate the construction of wharves and other improvements.

There is, therefore, no just foundation for the claim by the complainant as a riparian proprietor of a right to wharf out into the bay in front of his land. He holds, as his predecessors took the premises, freed from any such appendant right. The erection of his wharf, the obstruction to the use of which is the cause of the present suit, was, therefore, not only an interference with the rightful control of the city over the space occupied by it, but was an encroachment upon the soil of the State which she could remove at pleasure. Having the power of removal she could, without regard to the existence of the wharf, authorize improvements in the harbor, by the construction of which the use of the wharf would necessarily be destroyed.

But it is contended by the complainant that he had acquired by prescription a perfect title to the wharf when the present suit was commenced; in other words, that he or his grantors had been in the uninterrupted possession of the wharf for a period which barred the right of the State under her statute of limitations. The wharf was constructed in 1854; the defendants commenced the piling, capping, and planking, which constitute the obstruction complained of, in 1867; and the statute of limitations of the State declares that, "The people of the State will not sue any person for, or in respect of, any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless—

"First, such right or title shall have accrued within ten

years before any action or other proceeding for the same shall be commenced; or unless,

"Second, the people, or those from whom they claim, shall have received the rents or profits of such real property, or some part thereof, within the space of ten years."

Upon the supposed operation of this statute the pretension of the complainant rests.

In answer to this pretension it is contended with much force that the statute only applies to lands which the State holds, as private proprietor, for sale or other disposition, and in respect to which the title may be lost by adverse possession, as defined in the same statute, and not to lands which she holds as sovereign in trust for the public. To constitute sufficient adverse possession under the statute to bar the owner, when the claim of title is not founded upon a written instrument, the land must have been protected by a substantial inclosure, or been usually cultivated or improved, conditions inapplicable to the possession of land covered by tidewater, or of a wharf constructed thereon.

Where lands are held by the State simply for sale or other disposition, and not as sovereign in trust for the public, there is some reason in requiring the assertion of her rights within a limited period, when any portion of such lands is intruded upon, or occupied without her permission, and the policy of the statute would be carried out by restricting its application to such cases.

The terms, "shall have accrued," are used in the sense of "shall have existed" within the period designated. The title of the State to soils under the tidewaters of the bay accrued on her admission into the Union twenty-three years ago, but yet it would not be pretended that the State could not sue for any portion of such soils upon which a party had encroached, because ten years had elapsed since such admission. A literal construction of the terms used would denude the State of nearly the whole of her property. It would prevent her from suing an intruder of yesterday upon a title of twenty years.

But assuming that the statute applies to lands held by the

State, as sovereign, in trust for public purposes equally as to other lands, before the ten years prescribed had elapsed after the erection of the wharf, namely, in April, 1863, the legislature passed an act creating the Board of State Harbor Commissioners, the defendants in this suit, and provided that the commissioners should take possession of and hold all that portion of the bay lying along the water front of the city and county of San Francisco, and adjacent thereto, to the distance of six hundred feet into the waters of the bay, from the line of the water front, together with all the improvements, rights, privileges, franchises, easements, and appurtenances connected therewith or appertaining thereto, except such portions of the water front as were held by parties under valid leases, and of those portions when the leases expired.    That act also authorized the commissioners to institute suits for the possession of any wharf or wharves, and other rights and privileges, for the recovery of tolls, dockage, and wharfage; and for the removal of obstructions, and the abatement of nuisances on the water front, and to prosecute the suits to judgment; and declared that the possession and control of the water front, with its improvements, rights, privileges, franchises, easements, and appurtenances, were vested in the commissioners for certain specified purposes, all of which related to the protection of the harbor, the construction of wharves, landings, and other improvements intended for the safety and convenience of shipping and consequent promotion of commerce.    The act also prohibited any subsequent collection of tolls, wharfage, and dockage by any person or company, on any part of the water front, without authority of the commissioners, and made a violation of the prohibition a public offence, punishable by fine or imprisonment or both.

There is in these provisions a most emphatic declaration on the part of the legislature, that the State did not intend to abandon her control over the water front of the city, or to allow by silence any rights therein, which she held as sovereign in trust for the public, to pass into private ownership.

Statutes of limitation, as observed in a recent case in this court,* "are founded upon the general experience of mankind, that claims which are valid are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand, creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when by loss of evidence from the death of some witnesses and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth."

Although this language was used with reference to a demand upon a policy of insurance, it applies equally to claims for property in the possession of others. They are not generally held for long periods without some attempt at their enforcement. When, therefore, no claim to property is made for years against the possessor, the presumption arises that his possession is founded in right, and by statute the presumption being conclusive, the possessor is said to have acquired title by operation of the statute or by prescription. The presumption to which the statute gives this effect extends, however, only against individual claimants; their personal interest is supposed to be sufficient to induce vigilance in the enforcement of their claims. It does not extend against the State, which acts through numerous agents, having no such incentive to prosecute her claims. The rule, therefore, with respect to her rights is that they are not lost or impaired by the negligence of her officers, a rule which has been found by experience essential to the preservation of the interests and property of the public. Statutes of limitation are not for this reason held to embrace the State, unless she is expressly designated, or necessarily included by the nature of the mischiefs to be remedied.

The statute of California is exceptional in this particular. It declares that the State will not sue for or in respect to

---

* Riddlesbarger *v.* Hartford Insurance Company, 7 Wallace, 390.

real property, unless her title or right has existed within a prescribed time, or rents or profits have been received within that period. She thus allows a presumption to arise in favor of any occupant of her lands, and that presumption to become absolute, that she possesses no title or interest therein, if within that period no assertion of her title or interest is made. But this presumption is rebutted when such assertion is made, and it may be made by her as well by legislative act as by judicial proceeding.

In the present case, the act creating the harbor commissioners and authorizing them to take possession and improve the water front, was a public act relating to a matter of public concern, of which the complainant and all others were bound to take notice. Hardly anything, which we can readily conceive of, would be more expressive of the intention of the legislature that the State should conserve her title and interest in the whole water front of the city. In our judgment, it prevented the complainant from acquiring the title of the State by operation of the statute of limitations, as effectually as if that statute had not been in existence.

DECREE AFFIRMED.