JOHN G. RUGE, APPELLANT VS. APALACHICOLA OYSTER CAN-
NING AND FISH COMPANY ET AL., APPELLEES.

1. A preliminary injunction should not be granted on a bill sworn to
on information, and belief and unaccompanied by affidavit of the
facts from the person from whom the information and belief were
derived ; and an admission by defendant in his answer or affidavit
of a material fact alleged in the bill does not cure the defect when
there are other material facts unadmitted and unverified.

2. The dedication of a public park on the water front of a bay does not
carry the park into the bay, except to the extent of accretions
thereto. The submerge l lands of the bay not disposed of by the
State are her property, and afe not subject to disposition by the
owner of the land adjoining the bay.

3. "Florida Promenade," a public park dedicated to the city of Apa-
lachicola more than fifty years ago, if it extended to the bay
went no further, the parties who made the dedication having no
such right of property in the water front as authorized them to
create an easement therein. Florida was at the time a Territory
and that front was vested in the United States, but on the ad-
mission of Florida as a State it became vested in her.

4. The question of title to the submerged lands of the bay of Apa-
lachicola is not affected by the fact 'hat the act of the Territory
of Florida incorporating the city of Apalachicola gave limits to
the city which included the water space in front of the Prome-
nade. That only fixed the limits of municipal jurisdiction, with-
out reference to ownership of property.

5. The act of 1856 in favor of riparian owners, entitled "an act to
benefit commerce," held not to apply in the case of a public
park, as it did not fall within the contemplation of the Legisla-
ture or within the intention of the act.

6. R is the owner of water lots in the City of Apalachicola on one of
which he has an oyster canning factory. These lots do not
adjoin the Promenade as laid out on the land, but he alleges that
they adjoin the Promenade as it is extended into the bay, and
that the city has let a portion of this to a company for private
use, which is a diversion of the Promenade from its proper pur-
poses, that causes injury to the value of his lots : *Held*, That the
position of the lots towards the Promenade, as they do not touch
it on the land, and it also appearing that there is a street dedi-

JUNE TERM, 1889. 657

Ruge vs. Apalachicola Oyster C. & F. Co. et al—Argument of Counsel.

cated between his lots and the water space he erroneously alleges to be a part of the Promenade, is not such as to entitle him to maintain a bill to enjoin the diversion on the ground of injury to his property.

7. Where, in a case like this, the injunction sought is for a doubtful injury, or for speculative violation of complainant's rights, the relief is generally withheld.

8. If the object of the bill is to preserve the public easement from invasion, to authorize a private person to proceed for that purpose, on the ground of injury to his adjoining property, it must be an available easement.

Appeal from the Circuit Court for Franklin county.

The facts of the case are stated in the opinion of the court.

*J. W. Malone* for Appellant.

The dedication of The Florida Promenade is admitted by the defendants in their petition to lease and the resolution of the City Concil leasing it to the company and affidavits of Mayor Rice.

Besides it is proved by the map of the city of Apalachicola which constitutes a part of the record in this case. This map of itself is sufficient proof of the dedication.

The principle therefore announced by this court in the case of Ballard vs. Eckman & Vetsburg, 20 Fla., 661, has no application to the case at bar.

The factory of the company is erected upon the mud flats of the promenade and is surrounded by water. The space intervening between it and high ground is covered with sea weed and water at high tide and dry land at low tide.

The company has erected a causeway of plank and timber from the factory over the intervening space to high land and not only occupy the space upon the mud flats, which is covered by the factory, but also the intervening

space and the high land, which is covered by its causeway.

The mud flats do not lie between the factory and high land but are covered with water at all times. Brattons affidavit and map Exhibit No. 8.

The piling of shells upon these mud flats can be of no benefit whatever to the city of Apalachicola. As a sanitary measure it is shown by the testimony of experts that it would be of no benefit. As an improvement in reclaiming overflowed land it could be of no benefit without filling with shell the intervening space between the mud flats and high land and the contract does not provide for this. In fact it is evident from the evidence that the piling of shell upon the mud flats would be of no benefit whatever except to strengthen the foundations of the company's factory and afford it a convenient place of deposit for its useless shells. The appellee's counsel assumes that the water front in its natural state is unfit for the purposes contemplated by the dedication and concludes therefore that the city council had the right, 1, to change the physical features of the water front for the purpose of carrying out the design of the dedication ; 2, to contract with a private individual to perform the work and in consideration thereof to use the space for a limited time. The counsel in assuming his premise to be true thereby begs the question : because the burden is on him to prove his premise to be true ; otherwise his conclusion is necessarily erroneous. The purpose of the dedication must be ascertained from the pleadings and the proof. It is alleged in the bill and established by the proofs that the promenade including the water front was dedicated to the use of the public for health, recreation and amusement. It was neither dedicated for the purpose of navigation, nor for the purpose of passage, the bay was open for the one, and the streets for the other, it being ascertained that the sole purpose of the dedication was for the health, recreation and amusement of

the public, it now becomes necessary to ascertain, 1. Whether the water front in its natural state was unfit for that purpose. 2. If so, what changes are necessary to fit it for that purpose? and 3. Whether the changes purposed by the company would fit it for that purpose.

The water front of the promenade in its natural state opens upon the Apalachicola bay and presents a broad expanse of water. No object intervenes to obstruct the view of the bay or interrupt the breeze as it blows pure and fresh from the Gulf. The prospect is pleasing in the extreme and cannot fail to fill the most casual observer with delight.

This broad expanse of water whether dancing and glittering in the sunlight of day, or placid or sombre in the shadows of night, delights the eye and excites the imagination and imperceptibly turns the mind away from the consideration of the daily cares of business and leads it to the contemplation of the wonderful works of nature. "The imagination loves to be filled with an object or to grasp any thing that is too big for its capacity. We are flung into a pleasing astonishment at such unbounded views and feel a delightful stillness and amazement in the soul at the apprehension of them. The mind of man naturally hates everything that looks like a restraint upon it and is apt to fancy itself under a sort of confinement when the sight is pent up in a narrow compass and shortened on every side by the neighborhood of walls. On the contrary a spacious horizon is an image of liberty where the eye has room to range abroad to expatiate at large in the immensity of its views and to lose itself amidst the variety of objects that offer themselves to its observations such wide and undetermined prospects are as pleasing to the fancy as the speculations of eternity of infinitude are to the understanding."

42

" Our sight is the most perfect and delightful of all our senses. It fills the mind with the largest variety of ideas, converses with its objects at the greatest distances and continues the longest in action without being tired or satiated with its proper enjoyment. Our sight may be considered as a more delicate and diffusive kind of touch that spreads itself over an indefinite multitude or bodies, comprehends the largest figures and brings into our reach some of the remote parts of the universe." It is this sense which furnishes the imagination with its ideas, elevates thoughts and affords an intellectual recreation and amusement of the highest character. "Pleasing prospects and delightful scenes have a kindly influence on the body as well as the mind ; and not only serve to clear and brighten the imagination, but are able to disperse grief and melancholy and to set the animal spirits in pleasing and agreeable motion."

Besides, the breezes that blow pure and fresh from the Gulf invigorate the human system and give it renewed health and vitality. Is not a fine prospect and pure air calculated to impart health and afford recreation and amusement to the exhausted body and wearied mind ? If so, then the water front in its natural state was fit for the purposes of its dedication, and no change in its physical features was needed.

The wisdom of a half century deemed that no change in the water front was necsssary to fit it for the purposes of its dedication and made none ; but the wisdom of the present council, suddenly moved by the spring of self-interest, deemed a change necessary and seek to make such a one as we will now consider.

The change purposed by the company is the reclaiming of the mud flats by depositing its refuse oyster shells thereon until huge piles of shells rise above and displace the smooth and glassy water. Would this change fit the water front

for the purpose of its dedication ? Would it fit it for health, recreation and amusement ? It would certainly mar the present beautiful view of the bay and contaminate the pure air from the Gulf with the stench of the decaying oyster, and thereby become unpleasant to the sight and injurious to the health. Such a change therefore would be a diversion of the water front from the purposes of its dedication. Besides this change is contemplated being made slowly. A period of twenty years is allowed in which to make it. In the mean time the company have the privilege of occupying a space fronting on the promenade 300 ft., in which of erecting buildings and wharves, and thereby obstructing the view of the bay, and contaminating the air with the stench of the decaying oysters.

The appellee's counsel contends that the lease to the company is legal, and cites a number of cases to sustain it. In the case of Miles vs. Muzzy, 33 Mich. 61, it was held that the Mayor of a city, who was a practicing lawyer, might lawfully be employed when there was no collusion or fraud and no doubt as to the necessity and value of his services, by a resolution of the council to appear and defend a suit against the city, and that he could recover the value of his services. The weight of authority is against this decision, Dillon on Min. Corp., secs. 292, 444, but even if this were not so, the principle decided in the above case has no application to the case at bar. In that case there was no collusion or fraud and no doubt as to the necessity and value of his services ; in the case at bar these facts do not appear. In that case, the resolution was passed by a majority of the council, who had no personal interest in the contract ; while in the case at bar, the resolution was passed by vote of members of the council who had a direct interest in the lease ; hence the case cited is not applicable.

The reasons for the decisions in Jenkins vs. Union School

District, 39 Me., and Buell vs. Buckenham, 16 Iowa, 284, are that where a majority of a committee is authorized to act, they constitute a party capable of contracting; another member of a committee not acting as such, but as an individual, constitutes another party capable of being contracted with.  It is accordingly held that a majority of such a committee may contract with, or employ one of their own number, not acting as such, but as an individual, and such contract, if fairly made and without fraud or corruption, and within the limits of their power, will be binding upon the corporation.

In the case of Lawrence vs. Killen, 11 Kan., 499, it appears that after the making of the contract, the contractor became a member of the city council.  The court sustained the legality of this contract for that reason.

The decisions overthrow the principle that they are cited to support and determine the converse of it to be true.

I have not examined the cases of Albright vs. Town Council, 9 Rich., (S. C.) Law, 399, and R. R. vs. Clagett Speer, Eq., 562.  If, however, they support the principle for which appellee's counsel contends, they are in opposition to the decided weight of authority.

Appellee's counsel contends also that even if the lease or contract be illegal it does not necessarily follow that it is void so that one not a party thereto can object to it.  This proposition is not sustained by authority.  Such contracts are not only illegal but absolutely void and confer no rights whatever upon the parties thereto.  Dillon on Mun. Corp., sec. 444, and notes.

Appellee's counsel contends also that the city authorities had no power whatever over the mud flats and water front of the Florida Promenade and that the rights of complainant and defendant are to be determined independently of any action of the city.  The defendant leased the mud flats and

this water front from the city authorities and hold possession thereof by virtue of said lease and is thereby estopped from denying the right and title of the city thereto.

But grant for the sake of argument that the defendant was not estopped, yet it could not make this defence unless it was raised by the pleadings in the cause. Is it raised by the pleadings? The only pleading in this cause is the bill of complaint, and it is alleged therein " that the Florida Promenade is a public park situated in the city of Apalachicola, fronting on and extending into the bay, and is co-eval with said city. It was dedicated by the Apalachicola Land Company more than half a century ago to the use of the public for health, recreation and amusement, and has always since its dedication been open to the public for such uses. Your orator is the owner of wharf lots one, two, three, three-fourths of four, and one-half of five, and one-fourth of six, which adjoins the said Florida Promenade."

" That said company had taken possession of said 'Florida Promenade,' or a portion thereof, under and by virtue of said agreement with said Mayor and Aldermen, and was erecting buildings and wharves thereon, for their own use and convenience in the prosecution of its business, with the permission and consent of said Mayor and Aldermen." See paragraphs 1 and 2 of bill.

The map of the city of Apalachicola, which is in evidence, proves the dedication of the Florida Promenade, and the location of it to be in the city of Apalachicola.

The charter of the said city of Apalachicola, of which will take judicial notice, proves that the limits of said city extend one and one-half miles from the center of Washington square in said city, which embraces and includes therein the water front of the Florida Promenade. Acts of the Territory of Florida, approved 2d Feb'y, 1838. Besides, The Apalachicola Oyster Canning and Fish Company admit in

its petition to the city council for a lease of the water front of the Florida Promenade, and in the lease itself, that the water front is a part of said Florida Promenade, and is under the control of the city of Apalachicola.

In view of the foregoing allegations in the bill, and the proofs thereof, the appellee's counsel cannot successfully contend that the city authorities of Apalachicola have no power over this water front and the appellant no rights therein.

But again, the dedication of the Florida Promenade to the. city of Apalachicola by the Apalachicola Land Company was made prior to December 27, 1856. At that time the city held the fee simple title to this land in trust for the purposes aforesaid and became entitled to the water front on said land under the riparian act of December 27th, 1856. The plead-ings and proofs show that the city of Apalachicola was the riparian owner of the Florida Promenade at the time of the passage of said riparian act; and thereby became the owner of the submerged land adjacent thereto, by virtue of said act, hence the contention by the appellee's counsel that this sub-merged land is the property of the Apalachicola Land Company is not supported by the facts or the law of this case.

*Blount & Blount* for Appellees.

MAXWELL, J.: The complaint in this case is, that the plaintiff is owner of certain lots in the City of Apalachi-cola adjoining a public park, known as Florida Promenade; that this park was dedicated by the Apalachicola Land Company more than half a century ago to the public for health, recreation and amusement, and it has always since its dedication been open to the public for such uses; that it is held by the city in trust for those uses, and neither the

city nor its officers have power or authority to divert it therefrom; that notwithstanding this the Mayor and Aldermen of said city have leased the park to the Apalachicola Oyster Canning and Fish Company for twenty years at a yearly rent of ten dollars, for the purpose of erecting buildings and wharves thereon for the exclusive use and convenience of said company; that the company has taken possession, and are proceeding to erect buildings and wharves in pursuance of the terms of the lease for its own use and convenience; that the Mayor and Aldermen, except one, are stockholders in said company, and have acted in granting the lease in violation of the aforesaid trust; that the value of the plaintiff's lots will be materially depreciated by diverting the park from the uses to which it was dedicated; that the lots of plaintiff are the only elligible sites in the city for oyster canning factories, except the sites upon the said Promenade, the value of his said lots being greatly enhanced in value by said dedication; that the plaintiff has an oyster canning factory on one of his said lots, and that the erection of wharves, &c., by the company, besides obstructing the public use of the Promenade, will put upon the market other sites for oyster canning factories in close proximity to the lots of plaintiff, and thereby destroy his easement in the Promenade, and decrease the value of his lots; and that he was induced to purchase said lots because they adjoined the Promenade, and paid a higher price for them on that account than he would otherwise have done. This is the substance of the original bill and the amendment thereto. The prayer was in effect that the Mayor and Alderman of the city and the company to whom the lease was made, both of whom are made parties defendant to the suit, be enjoined from the proposed action under their agreement, as it will divert the Promenade from the public uses to which it had been dedicated.

On a motion for a preliminary injunction the defendants jointly filed what purports to be an answer, sworn to, in which they admit an agreement (saying it is not properly styled a lease) between the city and the Apalachicola Oyster Canning and Fish Company, whereby the company is authorized to occupy a portion of the water front of the Promenade for the erection of temporary buildings and wharves, to be used in the business of canning oysters and filling up the mud flats between the Promenade and the channel of the bay. They deny that this use is for the exclusive benefit of the company, and say the agreement on the part of the city was for its use and benefit in procuring the filling up and improvement of the water frontage of the Promenade, by the deposit of oyster shells therein; and deny that said frontage is now, or ever has been, used as a part of the Promenade, or that the buildings to be erected in the water will interfere with the public in the enjoyment of the Promenade on the land, as now known and used, or that the lots of complainant will be injured or lessened in value thereby. It is not denied that one or more of the members of the City Council of Apalachicola were stockholders in the Apalachicola Oyster Canning and Fish Company at the time the agreement or lease was made. There are other allegations of the answer not responsive to the equities of the bill, but seeking to avoid those equities by new matter. As such matter cannot be considered on the application for a preliminary injunction, we omit so much of the answer. Yonge & Bryan vs. McCormick, 6 Fla., 368. And the same rule would apply if it is to be treated as an affidavit merely, and also to other affidavits both of defendants and complainant, so far as they relate to the new matter.

The court refused the injunction on the original bill, and also after the amendment thereto, which is the portion of

the foregoing statement concerning the oyster canning business of complainant and the competition and injury to him from opening the Promenade to new sites for such business. The case comes here on appeal from these orders of refusal, and in the petition of appeal they are assigned for error.

The theory of the bill is a correct one, viz: that the owner of lots adjacent to a square dedicated to public use may maintain a bill in equity to restrain the diversion of the square to any private use inconsistent with the purpose for which it was dedicated, if by such diversion the value of the lots will be injuriously affected. Dillon on Mun. Corp., Section 661. If the bill of complainant, aided by affidavits, makes such a case, he is entitled to the injunction he asks, unless the denials of the answer and the affidavits for the defendants are sufficient to defeat him.

As to the bill itself, however, it is sworn to upon the best of the knowledge, information and belief of the affiant, and the defendants object to the granting of an injunction on this verification, unaccompanied by affidavits of the facts from those from whom the knowledge, information and belief of affiant was derived. The objection is well taken. Ballard vs. Eckman et al., 20 Fla., 661. But counsel for complainant says this should not avail defendants, because the dedication of the Promenade is admitted by the defendants in their petition to the City Council to lease, and the resolution of the council making the lease, and the affidavits of the Mayor. This does not meet the objection. An admission as to the dedication is not an admission of other material allegations of the bill ; and so far as these are left unverified and unadmitted the defect is as fatal as if no fact were admitted.

We might stop here, but as the defect may be cured in a new application for injunction, it may save litigation to dispose of other questions presented by the record. Looking

to the face of the bill itself, it presents sufficient facts to authorize an injunction. It alleges the dedication of the Promenade, the complainant's ownership of lots adjacent thereto, the leasing of the Promenade to the defendant company by the City Council, to be used for the erection of buildings and wharves thereon by the company for its private use, and depreciation thereby of the value of his lots, as well as deprivation of the public of the uses for which the dedication was made. On these naked facts there is a clear case for injunction. But the Promenade is alleged to be " a public park, situated in the City of Apalachicola, fronting on and entering into the bay," and to have been dedicated " more than half a century ago ; " and it appears from the answer and affidavits in the case, and from a map of the city, that the Promenade of which the bill speaks as being diverted to private use, and on which complainant says his lots abut, is the water space in front of the land Promenade as it is depicted on the map. The lots do not adjoin this land Promenade, and they are entirely surrounded by water. With this explanation of the *locus in quo*, it will be seen that what the bill alleges as to infringement on the rights of complainant and the rights of the public comes from the view of complainant that the water front is a part of the Promenade. He speaks of the Promenade as "entering into the bay ; " and the only contest made by the defendants as to this, is, not to deny that the bay front is a part of the Promenade, but to deny that it is, or ever has been, used by the public for the purposes to which the Promenade was dedicated. Is it a part of the Promenade? This is a question to be determined by the application of legal rules to the facts before us.

In the first place, when we look to the map of the city showing the dedication of " Florida Promenade," it also shows a dedication of streets on the sides of the Promenade,

and one of them, Water street, seems to run between it and the bay. This is my conclusion from the face of the map, and there is no evidence explaining it differently. Here is a diagram of the locality taken from the map:

. There are no lines or marks to show that the Promenade extended across either Market, or Broad, or Water street, or extended in such way as to break the continuity of these streets, and hence I infer that in the dedications their course was not interrupted. If this be so, such riparian rights as existed attached to Water street, and not to the Promenade, and the assumption that the latter extends into the bay is a mistaken one.

But that assumption is common to all the parties in this case, and if it should be contended for complainant that the court in deciding the controversy should consider this as if it were correct, still we cannot ignore another question the proper determination of which will lead to a conclusion adverse to complainant. The dedication of the Promenade by the Apalachicola Land Company was made more than fifty years ago. What right had the company to make a dedication extending into the bay? Even if the Promenade reached the bay, the company had no right in the submerged

lands thereof, and could not dedicate these. Admitting
that accretions to the soil of the Promenade would become
a part of it, that was a contingency which did not authorize
a dedication of the lands under the water in front of the
Promenade. The date of the dedication is left uncertain,
but, if made after the acquisition of Florida by the United
States and before Florida became a State, those lands were
the property of the United States, and hence were not alien·
able in any way by a company owning the land of the shore.
When Florida was admitted as a State of the Union, those
lands became hers. It is well settled that the original States
had the title to such lands, and that the new States on their
admission were also vested with title to those in their terri-
tory previously undisposed of. Angell on Tide Waters,
chap. 2, 36; Gieger vs. Filor, 8 Fla., 325; Pollard vs. Ha-
gan, 3 How., 212; Weber vs. Harbor Commissioners, 18
Wall., 57; Hoboken vs. Pennsylvania R. R. Co., 124 U. S.,
656. In the last case it is held that a riparian proprietor
cannot create an easement in such land, which will be sus-
tained against his grantee, to whom the State makes title
to the land discharged of the easement. The superior title
of the State in such case overrides the attempted easement.

The fact that the act of the Territory of Florida of Feb-
ruary 2d, 1838, incorporating the city of Apalachicola, gave
limits to the city which included the water front of the
promenade, does not affect the question of title to the sub-
merged lands, or of the right of the Apalachicola Land
Company to dedicate a promenade in those lands. This
charter only fixed the limits within which the corporation
should exercise municipal jurisdiction, and in no wise
touched any right of property within those limits.

It is not apparent that the Apalachicola Land Company,
in creating an easement for the public in the promenade,
undertook to include submerged lands of the bay; but if it

had done so, we have just shown that it had no title upon which such dedication could stand. Or, if it had a title previously acquired from the government which at the time owned it, if such government could give it, that is not alleged in the bill, and this is a defect in the ground work for an injunction which justified its refusal. Sullivan vs. Moreno, 19 Fla., 200. The allegations of title should be full, as well as "precise and clear."

Another thing appearing from the map is, that the lots of complainant, 1, 2, 3, 4, 5 and 6, on accountof which he claims the protection of an injunction, do not adjoin the promenade, as extended into the bay according to his allegation, but adjoin a branch of Water street, which runs to the bay between his lots and that part of what he calls the promenade. Can he jump one easement to assert injury to his property from the misappropriation of another easement which lies beyond it? If he could, it would seem that semething more than injury resting in speculative opinion should be required to appear, before a court of equity will interfere. In other words, where the injury is to the value of adjacent property, as claimed here, it would be more patent if arising from a misappropriation of the street or easement, on which the property directly abuts, than if from a misappropriation of an easement beyond that; and therefore a more definite and fuller showing of injury should be made in the latter case than mere opinion. The bill alleges that the proposed use of the promenade by the Apalachicola Oyster Canning and Fish Company will injure the value of complainant's lots, but wherein is not made evident, except in the allegation that it will open the promenade to the establishment of other oyster canning factories than his. We do not see in this an injury of which he can complain, if any at all. It does not necessarily follow that increase in the number of such factories will injuriously affect the business of his; and

672    SUPREME COURT.

Ruge vs. Apalachicola Oyster C. & F. Co. et al—Opinion of Court.

it is not to be supposed that he is seeking the advantage of an extortionate monopoly. But in answer to the bill it is denied that injury to the value of his lots will result from the privileges and buildings of the company. This is but one opinion against another, but it shows upon what slight ground complainant stands in asking the aid of a court of equity, even if his lots abutted on the promenade, being much slighter when they abut on an intervening street. He cannot ask for injunction except in the case of special and peculiar injury to be apprehended or sustained, and where such injury is doubtful the relief is generally withheld. 1 High on Injunctions, section 762. An opinion quoted in a note to this section says : " It is obviously not fit that the power of the court (of equity) should be invoked in this form for every theoretical or speculative violation of one's rights." Bigelow vs. Hartford Bridge Co., 14 Conn., 565.

On the subject of injury, it is to be remarked further, that if the easement is not susceptible of the use for which it was dedicated, there can be no injury for which an injunction will lie. Prince vs McCoy, 40 Iowa, 533 ; 14 Com., *supra.* The essence of the right to have the easement maintained is, that it is an available easement. If it is not, how can there be injury from invasion upon it, unless the character of the invasion is in itself an injury ? It is clear from the showing in this case that the promenade, if it has existence in the water font, or " marsh," as it is designated in exhibit 8, in front of the upland promenade, has never been used, and cannot be used in its present condition, for the purposes for which the dedication was made. Besides, the location upon which the buildings are to be erected, as shown by the * on the preceding diagram, is some 600 feet from the shore, and 210 feet from the nearest lot of complainant, and all the spaces between are incapable of

use as a public park. It is a case, therefore, within the authorities cited, and within the reason which denies injunction where there is not actual injury.

In view of the conclusions already expressed, it is scarcely necessary to consider the bearing and effect of the act of 1856, entitled "An act to benefit commerce," on the legal status of the water front in question. But it may be observed that the act originated in the claim of the State that the title to the submerged lands within its boundaries, of the character of those in front of the promenade, was in the State. The preamble is: "Whereas, it is for the benefit of commerce that wharves be built and warehouses erected for facilitating the landing and storage of goods; and whereas the State being the proprietor of all submerged lands and water priviliges within its boundaries, which prevent the riparian owners from improving their water lots, therefore," &c. The act then proceeds to vest the full title to such lands in the riparian proprietors, "giving them the full right and privilege to build wharves into streams of waters of the bay or harbor as far as may be necessary to effect the purposes described, and to fill up from the shore, bank or beach, ** not obstructing the channel, but leaving full space for the requirements of commerce, and upon lands so filled in to erect warehouses or other buildings," &c. If Water street, as I think is shown, ran between the promenade and the bay, the riparian right attached to that; but if the promenade really went to the shore, there may be a question whether the act vests any right to the water front as a public park. The use of it for such a purpose is not within the contemplation of the act; and either the State still holds it, or if it goes to the promenade, it goes divested of the character of a park, and if used at all, must be used for the "benefit of commerce," in the erection of wharves, ware-

houses and other buildings.    So, there seems to be nothing in the act to aid the cause of complaint.

We pass over other interesting questions discussed by counsel, as our conclusion would not be varied whatever might be our opinion on those questions.

The decree is affirmed.

The following opinion was delivered by RANEY, C. J., MITCHELL, J., concurring :

I concede that according to the above diagram of the *locus in quo* taken from the original map of the city of Apalachicola, Water street extends along the western side of the complainant's lots, which lots according to such map face on the Apalachicola, but not that this street runs along the shore of the Apalachicola bay between the bay and the Florida Promenade.    The assumption of all the parties to this suit is that the promenade extends down to the waters of the bay.    Whatever the fact may be, can be shown in the future progress of the case.    Assuming, however, that the street does intervene between the park and the bay, I do not now admit the power of the city to authorize the erection of wharves along such street in front of the promenade under the riparian act of 1856.

While I do not think the complainant has made a case entitling him to relief as an owner of lands adjacent to the promenade, and agree to an affirmance of the decree appealed from, yet I am justified in saying that the court is not to be understood to assert the proposition that municipal officers can legally contract on behalf of a municipality with a company, of which a majority of them are members, for a public improvement.    Though this fact is stated by complainant in support of the case presented by his bill, yet the bill is not one to have the agreement declared illegal on this theory.