Justice Stevens,
concurring in part and dissenting in part.
While I agree with most of the reasoning in the Court’s opinion, I do not agree with the rule it announces, or with all of the terms of its decree. In my view, the construction *625 and maintenance of wharves and other riparian improvements that extend into territory over which Delaware is sovereign may only be authorized by New Jersey to the extent that such activities are not inconsistent with Delaware’s exercise of its police power. I therefore join paragraphs 1(c), 2, 3, and 4 of the Court’s decree, and write separately to explain that in my view, New Jersey’s authority to regulate beyond the low-water mark on its shore is subordinate to the paramount authority of the sovereign owner of the river, Delaware.
I
At common law, owners of land abutting bodies of water enjoyed certain rights by virtue of their adjacency to that water. See 1 H. Farnham, Law of Waters and Water Rights § 62, p. 279 (1904) (“The riparian owner is ... entitled to have his contact with the water remain intact. This is what is known as the right of access, and includes the right to erect wharves to reach the navigable portion of the stream”). Yet those rights were by no means unlimited; “[wjhile the rights of the riparian owner cannot be destroyed . . . they are always subordinate to the public rights, and the state may regulate their exercise in the interest of the public.” Id., §63, at 284. See also 4 Restatement (Second) of Torts §856, Comment e (1977) (“[A] state may exercise its police power by controlling the initiation and conduct of riparian and non-riparian uses of water”).[1]
*626 From these authorities it is clear that the rights of riparian landowners are ordinarily subject to regulation by some State. The only relevant question, then, for purposes of this case, is which State. As the Court notes, “[i]n the ordinary case, the State that grants riparian rights is also the State that has regulatory authority over the exercise of those rights,” ante, at 613. But the history of the relationship between these two States vis-a-vis their jointly bounded river takes this case out of the ordinary. In light of the 1905 Compact, our previous decision in New Jersey v. Delaware, 291 U. S. 361 (1934), and the States’ course of conduct, I agree with the Court’s sensible conclusion that within the twelve-mile circle, the two States’ authority over riparian improvements is to some extent overlapping. In my judgment, however, that overlapping authority does not extend merely to the regulation of “riparian structures and operations of extraordinary character” beyond the low-water mark on New Jersey’s shore, ante, at 603, but to all riparian structures and operations extending out from New Jersey into Delaware’s domain. I would hold, therefore, that New Jersey may only grant, and thereafter exercise governing authority over, the rights of construction, maintenance, and use of wharves and other riparian improvements beyond the low-water mark to the extent that the grant and exercise of those rights is not inconsistent with the police power of the State of Delaware.
II
In Virginia v. Maryland, 540 U. S. 56,80 (2003), I set forth my view that the rights enjoyed by riparian landowners along the Virginia shore of the Potomac River were subject to regulation by the owner of the river, Maryland. I there explained that “th[e] landowners’ riparian rights are — like all riparian rights at common law — subject to the paramount regulatory authority of the sovereign that owns the river, [Maryland],” id., at 82 (dissenting opinion). I would have *627 held, therefore, that it was within Maryland’s power to prevent the construction of the water intake facility that Fairfax County, Virginia, wished to build. A fortiori, then — putting to one side the distinctions the Court today draws between the two cases, ante, at 617-618 — Delaware possesses the authority, under its laws, to restrict the construction of the proposed liquefied natural gas facility that would extend hundreds of feet into its sovereign territory.
But inherent in the notion of concurrency are limits to the authority of even the sovereign that owns the river. In Virginia v. Maryland, supra, I noted that the case did not require the Court to “determine the precise extent or character of Maryland’s regulatory jurisdiction,” because the issue presented was merely “whether Maryland may impose any limits on . . . Virginia landowners whose property happens to abut the Potomac.” Id., at 82 (dissenting opinion). Similarly, in this case we need not definitively settle the extent to which there may exist limitations on Delaware’s exercise of authority over its river and improvements thereon; for even Delaware’s counsel conceded at argument that Delaware could not impose a total ban on the construction of wharves extending out from New Jersey’s shores. Tr. of Oral Arg. 49, 50. Similarly, Delaware should not be permitted to treat differently riparian improvements extending outshore from New Jersey’s land and those commencing on Delaware’s own soil, absent some reasonable police-power purpose for that differential treatment. Apart from those clear constraints, however — and subject to applicable federal law[2] — in my view it is Delaware that possesses the primary authority over riparian improvements extending into its territory.
*628 III
Despite my differing views set forth herein, I do agree with the conclusion that Delaware may prohibit construction of the facility that spawned this complaint, and therefore join the portion of the Court’s decree so finding.

 See also Weber v. Board of Harbor Comm’rs, 18 Wall. 57, 64-65 (1873) (“[A] riparian proprietor, whose land is bounded by a navigable stream, has the right of access to the navigable part of the stream in front of his land, and to construct a wharf or pier projecting into the stream, for his own use, or the use of others, subject to such general rules and regulations as the legislature may prescribe for the protection of the public” (emphasis added)); Yates v. Milwaukee, 10 Wall. 497, 504 (1871) (“[The owner of a lot along the river] is . . . entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream . . . subject to such general rules and regulations as the legislature may see proper to impose” (emphasis added)).

 See 4 Restatement (Second) of Torts § 856, Comment e (1977) (“The United States may prohibit, limit and regulate the diversion, obstruction or use of navigable waters ... if those acts affect the navigable capacity of navigable waters”).