PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TIDEWATER FINANCE COMPANY,
  *Creditor-Appellant,*

v.

DEBORAH WILLIAMS,
  *Debtor-Appellee,*

and

BUD STEPHEN TAYMAN,
  *Trustee.*

No. 06-1618

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:05-cv-02147-RDB)

Argued: March 12, 2007

Decided: August 16, 2007

Before NIEMEYER, MOTZ, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the majority opinion, in which Judge Duncan joined. Judge Duncan wrote a separate concurring opinion. Judge Niemeyer wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** James Robert Sheeran, TIDEWATER FINANCE COMPANY, Chesapeake, Virginia, for Appellant. Edward A. Derenberger,

Glen Burnie, Maryland, for Appellee. **ON BRIEF:** Matthew M. Barnes, TIDEWATER FINANCE COMPANY, Virginia Beach, Virginia, for Appellant.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this bankruptcy appeal we must decide whether a court should toll the mandatory period a debtor must wait to obtain a second Chapter 7 discharge, during the pendency of any intervening Chapter 13 proceeding filed by the debtor. For the reasons stated below, we agree with the bankruptcy and district courts that tolling does not apply here, and so affirm.

### I.

### A.

The Bankruptcy Code offers individual debtors two primary avenues of relief: Chapters 7 and 13 of the Code.[1] Under Chapter 7, a debtor liquidates his non-exempt assets; the proceeds are then distributed to creditors pursuant to a schedule of priorities. 11 U.S.C.A. § 701 *et seq.* (West 2007); *see* 6 *Collier on Bankruptcy* ¶ 700.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007) [hereinafter *Collier*]. At the conclusion of a Chapter 7 proceeding, the debtor normally receives a discharge. *See* 11 U.S.C.A. § 727 (West 2007). The discharge provides the debtor with a "fresh start" by enjoining the collection of any remaining debts, unless the Code excepts those debts from discharge. *See* 11 U.S.C.A. §§ 523-24 (West 2007).

Alternatively, an individual may attempt to repay his debts through

---

[1]Individuals may also file under Chapter 11 of the Code, but most choose Chapter 13 because it offers similar relief with streamlined procedures. In addition, family farmers or fishermen with regular annual income may file under Chapter 12.

the procedure set forth in Chapter 13. 11 U.S.C.A. § 1301 *et seq.* (West 2007). Chapter 13 "provides a reorganization remedy for consumer debtors and proprietors with relatively small debts." *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). Under Chapter 13, the debtor submits a repayment plan to the bankruptcy court, which will confirm the plan if it meets statutory criteria that protect creditors' interests. *See* 8 *Collier* ¶¶ 1300.01, 1325.01, 1325.05. If a debtor successfully completes a confirmed plan, he receives a discharge of remaining eligible debts. *See id.* ¶ 1328.01. Because Congress intended Chapter 13 proceedings to be entirely voluntary, a debtor, as a matter of right, may at any time dismiss his Chapter 13 petition or convert it to a Chapter 7 proceeding. *See id.* ¶ 1307.01.

The initiation of either Chapter 7 or Chapter 13 proceedings triggers an "automatic stay" under 11 U.S.C.A. § 362(a) (West 2007). This automatic stay bars creditor collection activity for the duration of the proceeding, although creditors may petition the court to terminate, suspend, or condition the stay. *See* 3 *Collier* ¶¶ 362.01, 362.07.

The case at hand involves 11 U.S.C.A. § 727(a) (West 2004). That section of the Bankruptcy Code governs discharges in Chapter 7 cases and requires a court to grant a discharge unless certain conditions apply. *See id.* The condition at issue here, § 727(a)(8), provides that a debtor is not entitled to a discharge if he "has been granted a discharge under [Chapters 7 or 11], in a case commenced within six years before the date of the filing of the petition." *Id.* § 727(a)(8).[2] In other words, § 727(a)(8) requires debtors to wait at least six years, after filing a Chapter 7 or 11 case that resulted in a discharge before initiating a later Chapter 7 case, in order to be entitled to a discharge in the later case.

---

[2]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified in scattered sections of Title 11 of the U.S. Code), extends this period from six to eight years, but does not otherwise amend § 727(a)(8). *See id.* § 312. The 2005 Act applies, however, only to cases commenced on or after the enactment of the statute. *See id.* §§ 1406, 1501. The debtor here, Deborah Williams, filed her petition prior to enactment of the Act and so the six-year period applies in this case.

B.

The parties do not dispute the material facts of this case. On October 29, 1996, Deborah Williams filed a petition under Chapter 7; she later received a discharge. Almost two years later, on September 21, 1999, Williams initiated a Chapter 13 proceeding, which was dismissed on November 2, 1999. Williams initiated a second Chapter 13 case on May 15, 2000, which was dismissed on January 25, 2001.

On July 6, 2001, Tidewater Finance Company ("Tidewater") obtained a judgment for $7,468.84, plus accrued interest and costs, against Williams based on her default on an auto loan. After obtaining this judgment, Tidewater did not initiate proceedings to either enforce it or secure it through a lien or other device.[3]

Williams initiated a third Chapter 13 proceeding on August 14, 2001; it was dismissed on September 11, 2003. Tidewater has neither alleged nor presented evidence that Williams filed for Chapter 13 relief in bad faith. Based on the record before us, we have no reason to doubt that each time Williams filed for Chapter 13, she did so in a sincere effort to manage and pay her debts.

On March 15, 2004, Williams initiated the Chapter 7 petition at issue in this case. Tidewater commenced an adversary proceeding in the bankruptcy court objecting to discharge and then moved for summary judgment, arguing that Williams was ineligible for a discharge under § 727(a)(8). Tidewater acknowledged that § 727(a)(8) requires

---

[3]The dissent asserts, without any basis in the record, that Tidewater has failed to protect its rights "in large part because Williams has lingered in multiple bankruptcy proceedings." *Post* at 19. In truth, we have no idea why Tidewater chose not to enforce or secure its judgment. It may have decided that the possible return was not worth the cost of further proceedings, or simply have forgotten about the debt until receiving notice of Williams's Chapter 7 petition. The record does reveal that between the time Tidewater obtained a judgment against Williams and the initiation of the Chapter 7 petition at issue here, Tidewater had over 220 days when the automatic stay was not in effect, in which it could have acted, but failed to do so. Tidewater offers no reason why it did not pursue its claim during this period.

only that a debtor wait six years after filing a Chapter 7 petition that resulted in a discharge before filing a subsequent Chapter 7 action and that seven years, 139 days had passed since Williams filed the petition that resulted in her first discharge. Nevertheless, Tidewater argued that the § 727(a)(8) period was "equitably tolled" during Williams's three Chapter 13 proceedings, including the two that occurred *prior* to accrual of Tidewater's claim against Williams. If the waiting period were in fact tolled during the three Chapter 13 proceedings, for a total duration of two years and 234 days, Williams would not be entitled to obtain a second Chapter 7 discharge under § 727(a)(8).

The bankruptcy court denied Tidewater's motion for summary judgment and granted summary judgment to Williams, holding that § 727(a)(8) did not provide grounds for denial of a discharge in her case. *Tidewater Fin. Co. v. Williams (In re Williams)*, 333 B.R. 68, 70 (Bankr. D. Md. 2005). The court reasoned that "[e]quitable tolling is not applicable here because § 727(a)(8) does not define a limitations period for Tidewater, a creditor, to assert its claim"; rather, it "defines a condition that [Williams] was required to satisfy in order to qualify for . . . a discharge of her debts." *Id.* at 73. Tidewater appealed to the district court, which affirmed. *Tidewater Fin. Co. v. Williams*, 341 B.R. 530 (D. Md. 2006).

Tidewater appeals the district court's judgment affirming the order of the bankruptcy court. We review de novo the judgment of a district court sitting in review of a bankruptcy court. *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005). We apply to the bankruptcy court judgment the same standard employed by the district court. *Id.* Thus, we review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *Id.*

On appeal, Tidewater contends that: (1) § 727(a)(8) establishes a statute of limitations that must be tolled; and (2) failure to toll § 727(a)(8) would create a "loophole" in the Bankruptcy Code. We address each contention in turn.

II.

Tidewater's first argument is that the six-year waiting period in § 727(a)(8) is a limitations period that the bankruptcy court should

have equitably tolled during Williams's Chapter 13 proceedings. In assessing this statutory argument, we begin, as always, with the text of the statute. *Limtiaco v. Camacho*, 545 U.S. ___, 127 S. Ct. 1413, 1418 (2007). Section 727(a)(8) provides:

> The court shall grant the debtor a discharge, unless . . . the debtor has been granted a discharge under [Chapters 7 or 11], in a case commenced within six years before the date of the filing of the petition.

11 U.S.C.A. § 727(a)(8) (West 2004).

Plainly, the statute itself — unlike other Code provisions — does not expressly provide for tolling. *Cf.* 11 U.S.C. § 108(c) (2000) (extending statutes of limitation for creditors when the automatic stay bars their collection efforts). Notwithstanding this plain language, Tidewater argues that tolling applies here because of the principle that statutes of limitation are "customarily subject to 'equitable tolling,'" *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990), unless tolling would be "inconsistent with the text of the relevant statute." *United States v. Beggerly*, 524 U.S. 38, 48 (1998).

Tidewater's argument rests on a faulty premise: that § 727(a)(8) is a statute of limitations. In fact, § 727(a)(8) imposes no limitations period. "A statute of limitation requires a litigant to file a claim within a specified period of time." *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 252 (4th Cir. 2001); *see also Black's Law Dictionary* 927 (6th ed. 1990) (statutes of limitation "set[ ] maximum time periods during which certain actions can be brought or rights enforced"). Section 727(a)(8) does not "require[ ] a litigant" — here, Tidewater — "to file [its] claim within a specified period of time." *Rector*, 265 F.3d at 252. Instead, § 727(a)(8) conditions the ability of a *debtor*, like Williams, to obtain a Chapter 7 discharge, by requiring her to wait six years after initiating earlier proceedings that ended in a discharge. Thus, as the bankruptcy court explained, § 727(a)(8) "does not define a limitations period for Tidewater, a *creditor*, to assert its claim," rather it "defines a condition that the *Debtor* [Williams] was required to satisfy in order to qualify for a benefit, namely, a discharge of her debts." *Tidewater*, 333 B.R. at 73 (emphasis added).

Despite the fact that § 727(a)(8) does not set forth a "specified period of time" in which Tidewater can assert its claim, *Rector*, 265 F.3d at 252, Tidewater insists that § 727(a)(8) is a limitations period subject to equitable tolling. Tidewater principally relies on *Young v. United States*, 535 U.S. 43, 47 (2002), in which the Court held that other provisions in the Bankruptcy Code create a limitations period subject to equitable tolling. But *Young* offers Tidewater no support because the provisions at issue there differ vastly from § 727(a)(8).

The provisions at issue in *Young* are 11 U.S.C. §§ 507(a)(8)(A)(i) and 523(a)(1)(A) (2000). The latter, § 523(a)(1)(A), excepts from a discharge any tax "of the kind and for the periods specified in" § 507(a)(8).[4] Section 507(a)(8) in turn grants priority to unsecured income tax claims for which a return was due "after three years before the date of the filing of the petition." *Id.* § 507(a)(8)(A)(i).[5] As the *Young* Court explained, these two provisions combine to provide that "[i]f the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under § 507(a)(8)(A)(i) and is nondischargeable in bankruptcy." 535 U.S. at 46.

---

[4]Section 523(a)(1)(A) provides in pertinent part:

> Exceptions to discharge (a) A discharge under [select provisions of the Code] does not discharge an individual debtor from any debt— (1) for a tax or customs duty— (A) of the kind and for the periods specified in . . . 507(a)(8) of this title . . . .

11 U.S.C. § 523(a)(1)(A).

[5]Section 507(a)(8)(A)(i) provides in pertinent part:

> Priorities (a) The following expenses and claims have priority in the following order: . . . (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for— (A) a tax on or measured by income or gross receipts— (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(A)(i).

The Court in *Young* held that this three-year period was a "limitations period *because* it *prescribe[d] a period* within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced" by the claimant, there the IRS. *Id.* at 47 (emphasis added). Moreover, the Court noted that, like other statutes of limitations, the three-year period in *Young* "commence[d] when the claimant [the IRS] ha[d] a complete and present cause of action," i.e., when the taxpayer's return was due. *Id.* at 49.

Not only limitations periods, but all statutory periods to which courts have applied equitable tolling principles, contain these same two characteristics. First, they provide a plaintiff (in the bankruptcy context, a creditor) with a specified period of time within which the plaintiff must act to pursue a claim in order to preserve a remedy. *See, e.g., Young*, 535 U.S. at 47 (plaintiff (IRS) must act to collect tax debt or perfect tax lien within three years); *Zipes v. Trans World Airlines*, 455 U.S. 385, 393-95 (1982) (plaintiff must act to file charge of discrimination with EEOC within 180 days); *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 277, 284-85 (1987) (plaintiff must petition for review of final order of ICC within 60 days); *Irwin*, 498 U.S. at 92-93 (plaintiff must act to file Title VII action within 30 days of receipt of "right-to-sue" notice from EEOC). Second, such periods commence when the plaintiff has (or discovers that he has) a "complete and present cause of action." *See Young*, 535 U.S. at 48-49 (period commences with failure to file tax return); *Zipes*, 455 U.S. at 393-95 (period commences with discriminatory conduct); *ICC*, 482 U.S. at 277, 284-85 (period commences with service of final administrative order); *Irwin*, 498 U.S. at 92-93 (period commences with receipt of "right-to-sue" notice).[6] When these two circumstances exist, a court will often toll a period if it concludes that equitable considerations

---

[6]The dissent inexplicably takes issue with our citation of "non-bankruptcy cases" to illustrate the characteristics of limitations periods. *See post* at 27. Limitations periods exist in every sort of statutory scheme, "represent[ing] a *pervasive* legislative judgment . . . that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (internal quotation marks omitted) (emphasis added). No authority suggests that limitations periods take on some unique character when located in the Bankruptcy Code.

excuse a plaintiff's failure to take the required action within the time period. *See Young*, 535 U.S. at 50-51 (explaining that tolling is permitted when "claimant has actively pursued his judicial remedies" or "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass") (internal quotation marks omitted).

In stark contrast, the provision at issue here, § 727(a)(8), does not contain either of these critical characteristics.[7] First, it does not "prescribe[ ] a period [of time] within which [a] certain right[ ]" may "be

---

[7]Three lower-court cases (two of which are unpublished), which treated another provision of the Bankruptcy Code as a limitations period, constitute the only authority the dissent cites for its view that § 727(a)(8) is a limitations period. *See post* at 27 (*citing In re Womble*, 299 B.R. 810 (N.D. Tex. 2003), *aff'd on other grounds* 108 Fed. Appx. 993 (5th Cir. 2004); *In re Seeber*, No. 03-19567, 2005 WL 4677823 (Bankr. E.D. La. July 5, 2005); *In re Riley*, No. 01-4452, 2004 WL 2370640 (Bankr. D. Haw. April 20, 2004)). Of course, these cases do not bind us and are persuasive only to the extent that they rest on a sound rationale. As the dissent's failure to discuss their reasoning suggests, they in fact provide no persuasive rationale. Both *Riley* and *Seeber* rely on *Womble*, without further analysis. In *Womble*, a district court in Texas affirmed a bankruptcy court's holding that *Young* required the tolling of 11 U.S.C. § 727(a)(2)(A) (2000) because it, like the statute in *Young*, (1) "reference[s] 'the date of the filing of the petition'" and (2) "act[s] as [a] limitations period[ ], requiring creditors to promptly protect their rights or risk having a debt discharged in bankruptcy." 299 B.R. at 812. The court offered no reason why a provision that "reference[s] 'the date of the filing of the petition'" should automatically be interpreted as a limitations provision; the dissent offers none and we can think of none. The remaining rationale offered in *Womble* defines "limitations period" far too broadly — not every provision that "requir[es] creditors to promptly protect their rights or risk having a debt discharged in bankruptcy" constitutes a limitations period. After all, the mere possibility of discharge "requir[es] creditors to promptly protect their rights or risk having a debt discharged in bankruptcy." Thus, *Womble* and its progeny hardly constitute "persuasive" authority for tolling § 727(a)(8). Moreover, the cases interpreting 11 U.S.C. § 109(g)(2) (2000), which the dissent cites as an example of tolling, *post* at 28, are even less useful here. Those cases toll § 109(g)(2) to cure a prior violation of that provision; here, not even Tidewater suggests that Williams's Chapter 13 filings violated the Code.

enforced" by the *claimant*, Tidewater. *See Young*, 535 U.S. at 47. Instead, § 727(a)(8) prescribes a period of time a *debtor* must wait before becoming eligible for a discharge. Second, the six-year period in § 727(a)(8) does not "commence[ ] when the claimant [Tidewater] ha[d] a complete and present cause of action." *Young*, 535 U.S. at 49. Rather, the six-year period commences when the debtor initiates a bankruptcy proceeding that led to a prior discharge, which may be, as here, well before the claimant had "a complete and present cause of action."

Although a creditor may incidentally benefit from the debtor's inability to obtain a discharge during the six-year period, the extent of that benefit is entirely contingent on *when* the creditor's claim arose, i.e., when the debtor defaulted. Under the statute, the creditor may benefit for a very long period (five years and 364 days), a very short period (one day), or any time in between. If the debt accrued shortly after the first discharge, the creditor could wait more than five years to collect the debt, confident that the debtor could not obtain a discharge.[8] But in a case like that at hand, in which the creditor did not obtain a judgment against the debtor until more than four years after the initial discharge, the debtor will become eligible for another discharge in less than two years. If Congress had intended § 727(a)(8) to guarantee creditors six years of nondischargeability to enforce their claims, the statutory period would run from the accrual of the creditor's claim — instead of running from the initiation of a proceeding that may, as here, well predate that claim.[9]

---

[8]In some cases, even this confidence would be misplaced. If through a novation or some other device a second debtor (entitled to a discharge) was substituted for the unentitled debtor, then § 727(a)(8) would no longer bar the discharge of the same debt that it earlier affected. This is possible because § 727(a)(8) makes *specific debtors* ineligible for discharge, rather than, like the provisions in *Young*, making *specific debts* immune from discharge.

[9]We note that some courts have read § 727(a), which provides that "[t]he court shall grant the debtor a discharge, unless" one of several conditions is met, to vest bankruptcy courts with discretion to grant a discharge even when a ground for denying discharge is present. *See, e.g.*, *Union Planters Bank v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002). The Supreme Court, however, has said that "[u]nder § 727(a), the court may

Tidewater utterly ignores the critical differences between § 727(a)(8) and the provisions at issue in *Young*. Instead, Tidewater contends that because both § 727(a)(8) and the *Young* provisions set forth "lookback" periods, both must set forth limitations periods. The contention is meritless. "Lookback" simply describes *how* a statutory provision measures a period of time, not whether it constitutes a period subject to tolling. The Court tolled the period in *Young* not because it happened to measure time by looking backwards, but because it was a limitations period and equity required the application of tolling principles. In contrast, as demonstrated above, § 727(a)(8) lacks the defining characteristics of a limitations period. Moreover, § 727(a)(8) advances different policies than those served by limitations periods. As the Supreme Court has explained, limitations periods like that in *Young* further policies of "repose, elimination of stale claims, and certainty about a *plaintiff's* opportunity for recovery and a defendant's potential liabilities." *Young*, 535 U.S. at 47 (emphasis added). In contrast, § 727(a)(8) serves an entirely different purpose: deterring serial Chapter 7 bankruptcies by requiring *defendant debtors* to wait a specified period of time between Chapter 7 discharges.

Furthermore, as the district court recognized, adopting Tidewater's position would be at odds with the overall statutory scheme set forth in the Bankruptcy Code. Under Tidewater's view, a debtor, like Williams, could only attempt to utilize Chapter 13 to reorganize and pay down her debt if she were willing to extend the period she would have

---

not grant a discharge of any debts if" one of the conditions is met. *Kontrick v. Ryan*, 540 U.S. 443, 447 n.1 (2004) (dicta). Neither party argues that § 727(a) vests district courts with discretion to grant a discharge even when a ground for denial is present. Moreover, if § 727(a) does in fact vest bankruptcy courts with discretion to grant a discharge even when a ground for denial is present, Tidewater's case is even weaker. Under that interpretation, Williams could receive a discharge even if she had initiated this proceeding within the § 727(a)(8) six-year period — because the bankruptcy court could exercise its discretion to nonetheless grant a discharge. In that event it is even more difficult to conclude that § 727(a)(8) *grants* creditors a period of nondischargeability because the debts would be dischargeable, at the district court's discretion. For these reasons, in the case at hand we assume without deciding that a debtor is ineligible for discharge if one of the § 727(a) conditions is met.

to wait before possibly receiving a discharge under Chapter 7. This would discourage honest debtors from using Chapter 13 to pay their debts with the hope of *avoiding* a second Chapter 7 proceeding — because an unsuccessful Chapter 13 proceeding, even one filed in good faith, would extend the waiting period set by § 727(a)(8).

In addition, as the district court also observed, Tidewater's approach would allow all creditors to benefit from equitable tolling — even those that were not at all affected by the Chapter 13 proceeding that caused the tolling. *See Tidewater*, 341 B.R. at 537-38. This case provides an example. Tidewater's claim against Williams arose *after* her second Chapter 13 proceeding. Yet Tidewater contends that somehow it should receive the benefit of tolling the § 727(a)(8) period during Williams's first two Chapter 13 proceedings — time in which *it had no claim* against Williams that could have been affected by the automatic stay in those proceedings. Under Tidewater's theory, it would still benefit from tolling during the first two Chapter 13 proceedings even if Williams had already paid the debts of all those creditors affected by the automatic stay in those proceedings.

For all of these reasons, we can only conclude that the bankruptcy and district courts properly held that § 727(a)(8) is not a limitations period and tolling has no place here.

III.

Tidewater also argues that failing to toll § 727(a)(8) leaves a "loophole" in the Bankruptcy Code, which "allows a debtor to file a petition for relief under Chapter 7 and receive a discharge, then file, dismiss[,] and refile Chapter 13 petitions and cloak themselves [sic] with the automatic stay until six calendar years elapse." This contention must necessarily fail given our conclusion that § 727(a)(8) is not a statute to which tolling principles could apply. In any event, however, the "loophole" argument is singularly unpersuasive. For Congress has provided bankruptcy courts with several tools to remedy any "loophole" of the sort feared by Tidewater.

First, 11 U.S.C. § 105(a) (2000) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." It states that "[n]o provision

of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or *to prevent an abuse of process*." *Id.* (emphasis added). If a bankruptcy court found that a debtor was abusing Chapter 13 in the manner Tidewater fears, § 105(a) empowers the court to remedy that abuse.

Moreover, although the automatic stay that accompanies Chapter 13 filings bars creditor collection efforts, 11 U.S.C. § 362 (2000) allows creditors to request relief from the stay "for cause." Thus, if a creditor demonstrated that a debtor had filed a Chapter 13 proceeding in bad faith, the creditor could request relief from the stay from the court. Furthermore, if a debtor sought to dismiss a Chapter 13 action in order to avoid the bankruptcy court's judgment on that relief, such dismissal would bar the debtor from filing another bankruptcy petition for 180 days, giving creditors a window in which to pursue their claims. 11 U.S.C. § 109(g)(2) (2000).

Additionally, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 provides that if a debtor files a Chapter 13 petition within a year of dismissing a prior one, the automatic stay generally dissolves after 30 days. *See* 11 U.S.C.A. § 362(c)(3) (West 2007). And if the debtor dismisses and refiles more than two Chapter 13 petitions within a year, the automatic stay does not go into effect upon the filing of a third or subsequent petition. *See id.* § 362(c)(4). Although a debtor can argue that the stay should be in effect, the debtor bears the burden of rebutting, by clear and convincing evidence, a presumption that he or she filed the most recent petition in bad faith. *See id.* § 362(c)(3)-(4).[10]

Further, a debtor who successively files and dismisses Chapter 13

---

[10]These amendments appeared in a section of the Act entitled "Discouraging Bad Faith Repeat Filing." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 § 302. *See also id.* § 303 (titled "Curbing Abusive Filings"); *id.* § 312 (titled "Extension of Period between Bankruptcy Discharges"). Plainly, Congress was aware of the type of mischief Tidewater describes and enacted measures to remedy it — measures that do *not* include the equitable tolling of § 727(a)(8).

cases risks losing, forever, her ability to obtain a discharge of the debts that would have been dischargeable in those Chapter 13 proceedings. The Bankruptcy Code, 11 U.S.C. § 349(a) (2000), allows a court dismissing a bankruptcy petition, for "cause," to order that the dismissal of the petition bars the later discharge of any debts that could have been discharged in the initial proceeding.

Thus, Congress has provided bankruptcy courts with numerous measures to ward off the dire "loophole" scenario Tidewater forecasts. Significantly, each of the anti-serial-filing measures discussed above allows the bankruptcy court to make an individualized determination of whether the debtor is acting in good faith. This permits honest debtors to make full use of the bankruptcy system, while empowering bankruptcy courts to screen out bad-faith petitioners, precisely as Congress intended.

## IV.

Our dissenting colleague would instead defy congressional intent by "tolling" the § 727(a)(8) period during the pendency of a debtor's Chapter 13 proceeding. To reach this result, the dissent must contend that § 727(a)(8) is something that it manifestly is not — a limitations period. The weakness of the argument offered by the dissent in support of this contention actually demonstrates the critical differences between § 727(a)(8) and limitations periods like that in *Young*.

## A.

The dissent concedes that § 727(a)(8), unlike "typical" limitations periods — including that in *Young*, does *not* set forth a specified period of time *that commences when the plaintiff (here Tidewater) has or discovers it has a "complete and present cause of action*." *Young*, 535 U.S. at 49 (emphasis added); *see post* at 28-29. The dissent attempts to dismiss this difference by maintaining it "has no intrinsic significance" because a "statute may operate as a limitations period . . . by referencing any measuring point." *Post* at 28. Tellingly, the dissent offers no support for this contention.

The treatises on which the Supreme Court relied in *Young* clearly reject this novel theory. They teach that "[s]tatutes of limitation com-

mence to run against a cause of action from the time it accrues, or from the time when the holder thereof has the right to apply to the court for relief, and to commence proceedings to enforce his rights." 1 H.G. Wood, *Limitation of Actions* § 122a, at 684 (Dewitt C. Moore, ed., 4th ed. 1916), *cited approvingly in Young*, 535 U.S. at 47, 49; *see also id.* § 117, at 612 ("[T]he statute of limitations only begins to run from the time when the right of action accrues . . . ."); *id.* § 117, at 616 ("[T]he statute of limitations does not begin to run until there is a demand capable of present enforcement . . . ."); *id.* § 119, at 627 ("[T]he different periods within which the remedies for the cases provided for are to be pursued are to be reckoned . . . from the time the respective causes of action accrue . . . ."); *accord* 1 Calvin W. Corman, *Limitation of Actions* § 6.1, at 373 (1991) ("Because statutes of limitations do not begin to run against a cause until the action accrues, they are useful in preventing stale claims. The plaintiff cannot be charged with delay before his or her cause of action has accrued, as it would be unreasonable for any legal system to commence the running of its statute of limitations before suit can legally be brought."), *cited approvingly in Young*, 535 U.S. at 49.

Thus, it has been long established that limitations periods begin to run when the claim they govern accrues. That continues to be the law. *See, e.g.*, *Teamsters & Employers Welfare Trust v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002) (Posner, J.) ("A statute of limitations cuts off the right to sue at a fixed date after the plaintiff's cause of action accrued."); *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) ("[A] statute of limitations establishes the time period within which lawsuits may be commenced after a cause of action has accrued."); 51 Am. Jur. 2d *Limitation of Actions* § 9 (2d ed. 2000) ("a 'statute of limitations' establishes a fixed period of time within which lawsuits must be commenced after a cause of action has accrued"); *see also Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2171 n.3 (2007).

In sum, contrary to the dissent's unsupported assertion, limitations periods run from the accrual of the cause of action they govern — not from "any measuring point."[11] Because the § 727(a)(8) period does

---

[11]The discovery rule does not change this principle, but rather "allows [a] cause of action to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action." 2 Corman, *Limitation of Actions* § 11.1.1, at 134.

*not* begin to run from the accrual of the creditor's claim, it does not "cut[ ] off [a remedy] at a fixed date after th[at] . . . cause of action accrued" and so is not a limitations period. *Gorman Bros.*, 283 F.3d at 880.

B.

Moreover, although the dissent argues to the contrary, § 727(a)(8) fails to serve one of the critical purposes of *all* limitations periods, including that in *Young*.

The Supreme Court in *Young* held that "*all* limitations provisions" serve the purposes of "repose, *elimination of stale claims*, and certainty" regarding parties' rights. 535 U.S. at 47 (*quoting Rotella v. Wood*, 528 U.S. 549, 555 (2000)) (emphasis added). The dissent contends generally that § 727(a)(8) serves the same purposes as the limitations period in *Young*, *post* at 26, but then does not even attempt to demonstrate that § 727(a)(8) "eliminat[es] stale claims." *See post* at 26-27 (discussing the statute's furtherance of policies of "repose, certainty, etc." but omitting any discussion of how § 727(a)(8) furthers "elimination of stale claims").

This omission is startling, since the elimination of stale claims is the raison d'être of statutes of limitations. *See, e.g.*, *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415 (1998) ("[T]he object of a statute of limitation [is to] keep[ ] stale litigation out of the courts . . . .") (internal quotation marks omitted); *United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("Statutes of limitations . . . represent a pervasive legislative judgment that . . . the right to be free of stale claims in time comes to prevail over the right to prosecute them.") (internal quotation marks omitted); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 136 (1938) ("The statute of limitations is . . . designed to protect the citizens from stale and vexatious claims . . . ."); *Weber v. Bd. of Harbor Comm'rs*, 85 U.S. 57, 70 (1873) ("Statutes of limitation . . . protect[ ] parties from the prosecution of stale claims . . . ."); *see also Lekas v. United Airlines, Inc.*, 282 F.3d 296, 299 (4th Cir. 2002) ("[T]he public-interest policy for limitations periods [is] that at some point the right to be free of stale claims . . . comes to prevail over the right to prosecute them.") (omission in the original) (internal quotation marks omitted). Surely it was for this reason that the Supreme

Court in *Young* held that one of the purposes served by "*all* limitations provisions" is "eliminat[ing] stale claims." 535 U.S. at 47 (*quoting Rotella*, 528 U.S. at 555) (emphasis added).

The dissent must avoid discussing whether § 727(a)(8) eliminates "stale claims" because the statute obviously does not serve this purpose. The expiration of the § 727(a)(8) period bears no relation to the age of a creditor's claim. Some creditors may benefit from the debtor's ineligibility for discharge for nearly six years; other creditors may lose the benefit the very day after their claim arises. To the extent § 727(a)(8) "eliminates" claims, it arbitrarily cuts down stale *and* very fresh claims alike. For this reason, it does absolutely nothing to further a critical policy — eliminating stale claims — served by "all," *Young*, 535 U.S. at 47, limitations periods.

In sum, the dissent's own arguments conclusively demonstrate that § 727(a)(8) neither constitutes a statute of limitations nor serves the purposes animating such statutes.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

DUNCAN, Circuit Judge, concurring:

I concur in the majority opinion in this case. I briefly write separately because I am not unsympathetic to the concerns articulated by the dissent; I simply disagree that this is the appropriate forum in which to address them.

Under the Bankruptcy Code, the only relevant limitation imposed on Williams is that she not have "been granted a discharge under [Chapters 7 or 11], in a case commenced within six years before the date of the filing of the petition." 11 U.S.C. § 727(a)(8) (2000). Congress may well wish to comprehensively address the problem, identified by the dissent, created by a debtor who initiates multiple Chapter 13 proceedings between separate Chapter 7 petitions. Congress has

already constrained the relief available to Chapter 7 debtor-petitioners by expanding the waiting period between such filings from six to eight years. U.S.C.A. § 727(a)(8) (West 2007). It may similarly wish to exclude from that eight-year period any length of time during which Chapter 13 petitions are pending. To date, however, Congress has not done so, and I am reluctant to fill that gap in a manner that does not comport with the express statutory language.

My reluctance is compounded by the fact that Tidewater had several avenues of relief that were available to it here, but that it chose not to pursue. Obviously, it could have sought to protect its claim during the significant period available to it, instead of *choosing*, for unexplained reasons, not to do so. Further, it could have petitioned the court to terminate or condition the stays Williams received. 11 U.S.C. § 362(d). Such relief would have been particularly appropriate if, as Tidewater insinuates although never actually alleges, Williams's filings were in bad faith. Given its lack of diligence and absence of prejudice, Tidewater seems an unlikely candidate to claim the benefit of equitable tolling.

In lieu of the finely-tuned relief that was available to Tidewater on these facts, the dissent's view of the statute would turn the waiting period imposed on debtors into a statute of limitations subject to equitable tolling for the benefit of *all* creditors, whether or not prejudiced or deserving. I would prefer clearer Congressional guidance before interpreting a statutorily defined waiting period in such a manner.

NIEMEYER, Circuit Judge, dissenting:

This Chapter 7 bankruptcy proceeding is the fifth bankruptcy proceeding that Deborah Williams has commenced since 1996. Tidewater Finance Company, a creditor of Williams, contends that Williams is not entitled to a discharge of debts because her petition was filed without allowing for the six-year period of nondischargeability of debts to elapse. *See* 11 U.S.C. § 727(a)(8) (precluding discharge in Chapter 7 proceeding if debtor had been granted a discharge in a Chapter 7 proceeding filed within six years before the commencement date of the present proceeding). Even though more than six calendar years elapsed between the filing dates of Williams' two Chapter 7 proceedings, Tidewater Finance argues that the six-year period of

nondischargeability should be calculated by excluding periods during which Williams was pursuing three Chapter 13 proceedings and collection of her debts was stayed under 11 U.S.C. § 362(a).

I agree. Under the fully applicable reasoning of *Young v. United States*, 535 U.S. 43 (2002), § 727(a)(8)'s six-year period of nondischargeability should have been tolled during the pendency of Williams' three Chapter 13 petitions, when her creditors were denied their rights to enforce and collect her debts due to the Bankruptcy Code's automatic stay. *See* 11 U.S.C. § 362(a). Therefore, Williams is ineligible to receive a discharge in this proceeding, and Tidewater Finance is entitled to summary judgment to that effect. Accordingly, I would reverse.

I

Deborah Williams financed the purchase of an automobile in October 1997, signing a purchase money note and security agreement. After the note and security agreement were assigned to Tidewater Finance Company, Williams defaulted, and the automobile was repossessed and sold. In July 2001, Tidewater Finance obtained a deficiency judgment against Williams in Virginia state court in the amount of $7,468.84 plus interest. Tidewater Finance has not yet obtained satisfaction of the judgment, in large part because Williams has lingered in multiple bankruptcy proceedings.

Over the course of eight years, from 1996 to 2004, Williams filed five bankruptcy petitions, as follows:

| Chapter | Filing Date | Disposition | Length of pendency |
|---|---|---|---|
| 7 | 10/29/1996 | Discharge of debts on 2/10/1997 | 104 days |
| 13 | 9/21/1999 | Dismissed on 11/2/1999 | 42 days |
| 13 | 5/16/2000 | Dismissed on 1/25/2001 | 254 days |
| 13 | 8/14/2001 | Dismissed on 9/11/2003 | 758 days |
| 7 | 3/15/2004 | Pending | |

She first filed a Chapter 7 bankruptcy petition on October 29, 1996, and obtained a discharge of debts. Having received this fresh start,

Williams incurred new debts, including the automobile debt owed to Tidewater Finance. After incurring the Tidewater Finance debt, she filed Chapter 13 bankruptcy petitions on three separate occasions: September 21, 1999, May 16, 2000, and August 14, 2001. Williams voluntarily dismissed each of them, as authorized by 11 U.S.C. § 1307(b), before completing payments and obtaining a discharge. Lastly, she filed her second and currently pending Chapter 7 petition on March 15, 2004, seeking a discharge of all dischargeable debts, including her debt to Tidewater Finance.

Even though this last Chapter 7 petition was filed over seven years after Williams commenced her previous Chapter 7 proceeding, the seven years were interspersed with three Chapter 13 proceedings that Williams commenced. During the nearly three years that her Chapter 13 proceedings were pending, Williams benefited from automatic stays of her creditors' efforts to collect debts. *See* 11 U.S.C. § 362(a).

Tidewater Finance commenced this action and filed a motion for summary judgment to oppose discharge in the currently pending Chapter 7 proceeding, claiming that Williams was not eligible for a discharge because she did not allow six years of nondischargeability to elapse between filings, as required by the "lookback" period of 11 U.S.C. § 727(a)(8).[1] Tidewater Finance acknowledged that Williams commenced her initial Chapter 7 case, in which a discharge was granted, more than six years before she filed the pending Chapter 7 petition. But it argued that the two years and 324 days during which Williams' Chapter 13 petitions were pending and debt collection was stayed are excluded from the six-year lookback period, under the principle of equitable tolling. Therefore, her current Chapter 7 petition was filed too soon to allow creditors the six-year period provided for in § 727(a)(8). Accordingly, she is ineligible for a discharge of debts in her present Chapter 7 case.

---

[1]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 made extensive changes to the Bankruptcy Code, including extending the lookback period under 11 U.S.C. § 727(a)(8) to eight years. *See* Pub. L. No. 109-8, § 312(1), 119 Stat. 38. The pre-2005 version of the Bankruptcy Code governs this case because Williams filed her Chapter 7 petition before the 2005 Act took effect. Therefore all citations in this opinion refer to the pre-2005 Code, unless otherwise noted.

The bankruptcy court rejected Tidewater Finance's equitable tolling argument and denied its motion for summary judgment, and the district court affirmed. Reasoning as the bankruptcy court did, the district court stated that "equitable tolling is inconsistent with the text of § 727(a)(8)" and that "even if § 727(a)(8) were subject to equitable tolling, it would be inappropriate to apply that doctrine here because Tidewater voluntarily chose not to protect its rights during the period between Williams' Chapter 7 cases."

From the order of the district court, Tidewater Finance filed this appeal, raising the sole issue of whether § 727(a)(8)'s six-year look-back period should exclude the time during which Williams was protected by Chapter 13 proceedings from the creditors' efforts to collect debts.

## II

Because the resolution of this issue involves the construction of several provisions of the Bankruptcy Code, I begin with a recitation of the statutory scheme in which § 727(a)(8) functions.

Chapter 7 of the Bankruptcy Code provides for the liquidation and distribution of the assets of a debtor upon being adjudged bankrupt and discharged of debts. *See* 11 U.S.C. § 701 *et seq.* Under this proceeding, creditors usually receive a portion of the proceeds in lieu of full repayment of debts, and the debtor receives a fresh start through the discharge. *See* 1 *Collier on Bankruptcy* ¶ 1.03[2] (15th ed. 2006). The discharge absolves the debtor of all debts existing when the Chapter 7 petition was filed, except for certain debts deemed nondischargeable by 11 U.S.C. § 523. *See* 11 U.S.C. §§ 727(b), 524.

Because a Chapter 7 discharge is such strong medicine, the debtor may receive it only upon satisfying the conditions stated in 11 U.S.C. § 727(a). *See* 11 U.S.C. § 727(a); *see also Kontrick v. Ryan*, 540 U.S. 443, 447 (2004). One of these conditions is the passage of a six-year period of nondischargeability, as provided in § 727(a)(8):

> The court shall grant the debtor a discharge, unless . . . the debtor has been granted a discharge under [Chapter 7 or

Chapter 11] in a case commenced within 6 years before the
date of the filing of the petition.

11 U.S.C. § 727(a)(8) (2000). Section 727(a)(8) thus prescribes a six-
year period during which a debtor is not entitled to protection against
creditors — a period of nondischargeability of debts incurred after a
debtor obtained a fresh start under Chapter 7.

Section 727(a)(8)'s "unmistakable purpose" is "to prevent the cre-
ation of a class of habitual bankrupts — debtors who might repeatedly
escape their obligations as frequently as they chose by going through
repeated bankruptcy." *Perry v. Commerce Loan Co.*, 383 U.S. 392,
399 (1966). This purpose, "the prevention of recurrent avoidance of
debts," *id.* at 402, is clearly evident from the history of the six-year
period of nondischargeability. Through an oversight, the Bankruptcy
Act of 1898 placed no restrictions on how often a debtor could obtain
discharges under Chapter 7. Concerned that certain individuals were
obtaining repeated, frequent discharges in bankruptcy, Congress
enacted the six-year limitation in 1903. *See* Act of February 3, 1903,
ch. 487, § 4, 32 Stat. 797; *see also In re Seaholm*, 136 F. 144, 146
(1st Cir. 1905) (recounting the legislative history). Accordingly, a six-
year period of nondischargeability of debts must now follow a debt-
or's discharge under Chapter 7.

Because the six-year limitation is imposed on the current petition
and is determined by looking back to the previously filed petition in
which a discharge was obtained, it is referred to as a "lookback"
period. *See Young v. United States*, 535 U.S. 43, 46 (2002).

Section 727(a)(8)'s period of nondischargeability defines certain
rights of a creditor in tandem with those of a debtor. The very term
"debtor" implies the existence of a creditor who would enforce his
right to collect monies owed from the debtor. The creditor's rights are
the inverse of the debtor's. By making debts nondischargeable for six
years, § 727(a)(8) provides a creditor a six-year period within which
to lend monies to the debtor and collect them without risk that the
debtor may avoid his obligations through a discharge under Chapter
7.

Chapter 13 provides individual debtors with an alternative method,
distinct from Chapter 7's liquidation method, for dealing with debts

in bankruptcy, altering the rights of such debtors and their creditors during the six-year period of nondischargeability. Chapter 13 permits wage-earning debtors, who often lack substantial assets, to repay their debts, under the bankruptcy court's protection, according to an extension or composition plan funded out of future earnings. *See* 8 *Collier on Bankruptcy* ¶ 1300.02. While the Chapter 13 plans often permit the debtor to repay less than the full amount of their debts, Chapter 13 nonetheless promotes repayment by providing a framework for the orderly payment of debts out of future income that would be unavailable if the creditor tried to enforce its judgment by the liquidation of a debtor's few assets. *See* H.R. Rep. No. 595, at 117-18 (1977), ("The benefit [of Chapter 13] to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy").

Generally speaking, under the pre-2005 Code, a debtor could file a Chapter 13 petition and receive a discharge at any point, even immediately after obtaining a Chapter 7 discharge.[2] *Cf. Young*, 535 U.S. at 46 (noting that "the Code does not prohibit back-to-back Chapter 13 and Chapter 7 filings"); *see also* 8 *Collier on Bankruptcy* ¶ 1300.40[4]. But this possibility of a debtor entering Chapter 13 proceedings soon after a Chapter 7 discharge was not intended to undermine § 727(a)(8)'s goal of preventing debtors from repeatedly escaping their obligations and granting creditors a period to lend and collect money safely. *See Perry*, 383 U.S. at 399; *see also Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) ("Congress never intended, of course, that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts"). While a debtor could avail himself of Chapter 13 within § 727(a)(8)'s six-year period of nondischargeability, the intended function of Chapter 13 remained the facilitation of the debtor's payment, not avoidance, of debts. Indeed, upon a debt-

---

[2] Under the 2005 amendments, a debtor may not obtain a Chapter 13 discharge in a case filed within two years of the filing of an earlier Chapter 13 petition that yielded a discharge, or within four years of the filing of an earlier Chapter 7, 11, or 12 petition that yielded a discharge. *See* 11 U.S.C.A. § 1328(f) (West 2007). Also under the 2005 amendments, the automatic stay of § 362 for a Chapter 13 petition is subject to qualifications if the debtor filed and dismissed a Chapter 13 petition in the previous year. *See id.* § 362(c)(3), (4).

or's receiving a Chapter 13 discharge, the six-year period of nondischargeability under Chapter 7 began again. *See* 11 U.S.C. § 727(a)(9) (denying a Chapter 7 discharge if debtor received a Chapter 13 discharge within preceding six years).

Contrary to the intended operation of Chapter 13, however, certain features of its procedure created a loophole through which debtors could avoid their obligations through serial bankruptcy filings, thereby undermining § 727(a)(8)'s six-year period of nondischargeability. As noted, upon the filing of a Chapter 13 petition, a debtor benefits from an automatic stay of any creditor action during the pendency of the petition. *See* 11 U.S.C. § 362(a). Yet, in keeping with the voluntary nature of Chapter 13 proceedings, § 1307(b) provides that "[o]n request of the debtor *at any time* . . . the court shall dismiss a case" filed under Chapter 13. (Emphasis added). Section 1307(b) thus permits the debtor to exit Chapter 13 at any point, having enjoyed the protection of the automatic stay and yet without having had to pay anything to creditors, nor having had to proceed to a discharge that would restart the clock on Chapter 7's six-year period of nondischargeability. Because the debtor controls the initiation and termination of the Chapter 13 proceeding, he could file a series of Chapter 13 proceedings, obtaining a stay with each filing, and thereby erode or even destroy the period of nondischargeability afforded creditors by § 727(a)(8). Thus, a debtor could obtain a Chapter 7 discharge; incur new debts that would be nondischargeable during the six-year period; immediately file a Chapter 13 petition and invoke the automatic stay of § 362(a); dismiss the Chapter 13 petition after the six-year period has run but before receiving a Chapter 13 discharge; and then file a Chapter 7 petition and receive a discharge of debts that were previously nondischargeable under § 727(a)(8).

The Supreme Court in *Young*, 535 U.S. 43 (2002), confronted this loophole in a related context and closed it by applying principles of equitable tolling. I would do the same here.

In *Young*, the Internal Revenue Service attempted to prevent debtors from obtaining a Chapter 7 discharge of a tax debt that appeared to fall outside of the three-year lookback period of nondischargeability of tax debts, established by 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8). 535 U.S. at 46-47. Section 523(a)(1)(A) deems nondischar-

geable, among other debts, a tax "of the kind and for the periods specified in section . . . 507(a)(8)." Section 507(a)(8)(A) in turn establishes priority of "unsecured claims of governmental units" for an income tax "for a taxable year ending on or before the date of the filing of the [bankruptcy] petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." Read together, these sections provide that if a governmental unit has a claim for taxes for which the return was due within the three years that preceded the bankruptcy petition's filing, the tax debt is deemed nondischargeable by § 523(a)(1)(A). *See Young*, 535 U.S. at 46.

Like Williams, the debtors in *Young* had filed and voluntarily dismissed a Chapter 13 petition, the pendency of which triggered the § 362(a) automatic stay and prevented the IRS from collecting the debt during the three-year lookback period. After the lookback period ended, the debtors filed a Chapter 7 petition, seeking a discharge of the tax debt. The *Young* Court described the loophole, which is the same I described above, as follows:

> Since the Code does not prohibit back-to-back Chapter 13 and Chapter 7 filings (as long as the debtor did not receive a discharge under Chapter 13, see §§ 727(a)(8), (9)), a debtor can render a tax debt dischargeable by first filing a Chapter 13 petition, then voluntarily dismissing the petition when the lookback period for the debt has lapsed, and finally refiling under Chapter 7. During the pendency of the Chapter 13 petition, the automatic stay of § 362(a) will prevent the IRS from taking steps to collect the unpaid taxes, and if the Chapter 7 petition is filed after the lookback period has expired, the taxes remaining due will be dischargeable.

535 U.S. at 46.

To close the loophole, the Court applied equity, reasoning that the three-year lookback period "is a limitations period subject to traditional principles of equitable tolling." 535 U.S. at 47. The Court affirmed that "limitations periods are customarily subject to 'equitable tolling,' unless tolling would be inconsistent with the text of the rele-

vant statute." *Id.* at 49 (quotation marks and citations omitted). Traditionally, tolling has been applied in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Id.* at 50 (*quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Despite the absence of these traditional reasons for tolling, the *Young* Court concluded that tolling of the three-year lookback period was appropriate in bankruptcy to close the loophole: "The Youngs' Chapter 13 petition erected an automatic stay under § 362, which prevented the IRS from taking steps to protect its claim. When the Youngs filed a petition under Chapter 7, the three-year lookback period therefore excluded time during which their Chapter 13 petition was pending." *Id.* at 50. The very fact that "*the IRS was disabled from protecting its claim* during the pendency of the Chapter 13 petition" justified the tolling of the three-year period. *Id.* (emphasis added).

The instant case resembles *Young* in all material respects. *Young* concluded that the three-year lookback period of § 523(a)(1)(A) "is a limitations period because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced." *See Young*, 535 U.S. at 47. Likewise, the six-year lookback period of § 727(a)(8) is a limitations period because it prescribes a period within which a certain right — nondischargeability under Chapter 7 — may be enforced. The *Young* Court then focused on the fact that "the lookback period serves the same 'basic policies [furthered by] all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities.'" *Id.* at 47 (*quoting Rotella v. Wood*, 528 U.S. 549, 555 (2000)). Section 787(a)(8) provides a measure of repose: after the six-year lookback period elapses, debts become fully dischargeable, subject to Chapter 7's provisions. And § 787(a)(8) provides creditors and debtors with certainty that during the six-year lookback period, debts may not be discharged under Chapter 7. Given the similarities between the lookback periods in *Young* and this case, as well as the reasoning of *Young*, one must conclude that § 727(a)(8) is a limitations period and therefore subject to tolling.

The majority opinion, however, reaches the opposite conclusion, holding that § 727(a)(8) is not a limitations period and therefore is not subject to tolling. *Ante* at 7. Citing non-bankruptcy cases that do not purport to define a "limitations period," the majority declares two required elements of a limitations period subject to tolling: the provision of "a specified period of time within which the plaintiff must act to pursue a claim in order to preserve a remedy," and the period's "commenc[ement] when the plaintiff has (or discovers that he has) a complete and present cause of action." *Ante* at 8-9 (citations omitted).

While these elements accurately describe many statutes of limitations, neither *Young*, the most applicable precedent, nor any other authority cited by the majority suggests that these are necessary conditions for deeming a lookback period to be a limitations period. Rather than elaborating a formal doctrine of the metaphysics of a limitations period, *Young* instead assessed the lookback period's function — prescribing a period within which certain rights may be enforced — and its purposes — repose, certainty of parties' rights, etc. *See* 535 U.S. at 47.

Following *Young*, bankruptcy courts have tolled a limitations period that lacks the majority's elements and that is closely related to the limitations period at issue here. Section 727(a)(2)(A) imposes another condition on obtaining a Chapter 7 discharge, stating that "The court shall grant the debtor a discharge, unless — the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." This one-year lookback period, which focuses on the debtor's conduct, neither prescribes a period of time within which a claimant must act nor commences when the claimant has a complete cause of action. Bankruptcy courts have nevertheless held that § 727(a)(2)(A)'s one-year lookback period is tolled during the pendency of a debtor's prior bankruptcy proceeding. *See In re Womble*, 299 B.R. 810 (N.D. Tex. 2003), *aff'd* 108 Fed. Appx. 993 (5th Cir. 2004); *In re Seeber*, No. 03-19567, 2005 WL 4677823 (Bankr. E.D. La. July 5, 2005); *In re Riley*, No. 01-4452, 2004 WL 2370640 (Bankr. D. Hawaii April 20, 2004).

Similarly, courts have tolled the lookback period in § 109(g) of the Bankruptcy Code, even though it contains neither of the majority's

elements and functionally resembles § 787(a)(8). Section 109(g)(2) prevents one from being a debtor under the Bankruptcy Code within 180 days of having obtained a voluntary dismissal of an earlier filed case. *See* 11 U.S.C. § 109(g)(2). Section 109(g)(2) does not, on its face, prescribe a period of time within which a claimant must act. It operates with reference to the debtor's conduct and does not commence when a cause of action of the creditor accrues. Nonetheless, courts have routinely tolled § 109(g)(2)'s lookback period when a debtor's conduct prevented creditors from being able to enforce their debts within its time frame. *See, e.g.*, *In re Dickerson*, 209 B.R. 703, 708 (W.D. Tenn. 1997); *In re Moody*, 336 B.R. 876, 880 (Bankr. S.D. Ga. 2005); *In re Rives*, 260 B.R. 470, 471-72 (Bankr. E.D. Mo. 2001); *In re Berts*, 99 B.R. 363, 365 (Bankr. N.D. Ohio 1989); *In re Wilson*, 85 B.R. 72, 72 (Bankr. N.D. Ill. 1988).

Even taking the majority on its own terms, only by a superficial reading of § 727(a)(8) can one say that it does not provide a specified period of time within which the creditor must act to preserve certain remedies. While § 727(a)(8) does not, on its face, address "creditors," the obvious and undisputed operation of § 727(a)(8) is to set a time limit on the nondischargeability of debts, and thereby to set a time limit on creditors' rights to enforce the nondischargeability of debts.[3]

As for its second criterion, the majority notes that § 727(a)(8)'s lookback period is measured not from the time a creditor has a present cause of action but from the time a debtor files the first Chapter 7 petition. This distinction has no intrinsic significance, though. A statute may operate as a limitations period, prescribing a time within which rights may be enforced, by referencing any measuring point. And Congress, of course, may choose any point it wishes from which to measure a limitations period. The majority is troubled that § 727(a)(8) could provide varying periods of time to enforce the non-

---

[3]Attempting to show that § 727(a)(8) does not set time limits on a creditor's rights, the majority notes the remote possibility that a second debtor, one entitled to a discharge, could be substituted for the unentitled debtor. *Ante* at n.8. As the *Young* Court noted, however, the fact that a limitations period affects "only *some*, and not *all* legal remedies," means simply that it is "a more limited statute of limitations, but a statute of limitations nonetheless." 535 U.S. at 47-48.

dischargeability of various debts, depending on the date the debts were incurred. While this result differs from the typical statute of limitations, it simply reflects Congress's choice of a different measuring point. Indeed, the Supreme Court in *Young* rejected a similar argument that §§ 523(a)(1) and 507(a)(8)(A) did not constitute a limitations period because those sections create the potential for situations in which the IRS would have less than three years to collect a tax debt. *See* 535 U.S. at 48-49.

## III

Given that § 727(a)(8) is a limitations period under the fully applicable reasoning of *Young*, it should be tolled "unless tolling would be 'inconsistent with the text of the relevant statute.'" *See Young*, 535 U.S. at 49 (*quoting United States v. Beggerly*, 524 U.S. 38, 48 (1998)). Tolling is appropriate here for the same reason the Supreme Court found it appropriate in *Young* — Williams' Chapter 13 petition erected an automatic stay under § 362(a), which destroyed or reduced Tidewater Finance's time for collecting the debt or enforcing its judgment. *See id.* at 51. Because Tidewater Finance was so disabled during the pendency of the Chapter 13 petition, "this period of disability tolled the [six-year] lookback period when" Williams filed her Chapter 7 petition. *Id.* at 50-51.

Far from being inconsistent with § 727(a)(8), tolling the six-year lookback period during the pendency of a debtor's Chapter 13 petitions promotes its purpose. Section 727(a)(8) is meant to require a debtor who has received a "fresh start" under Chapter 7 to spend six years acting financially responsibly, not avoiding debts through a discharge. *See Perry*, 383 U.S. at 402. In the same vein, § 727(a)(8) is meant to create certainty for creditors that the debts they are owed will not be discharged within that six-year period. Not only does this certainty benefit creditors, it also benefits debtors. With the protection afforded by the six-year period of nondischargeability, creditors become more willing to lend money to debtors with poor credit histories (due to a previous Chapter 7 discharge) at lower rates than they would without the protection of § 727(a)(8).

Section 727(a)(8) leaves open, of course, the possibility that a debtor might resort to Chapter 13 during the six-year period, and so

the six-year period of nondischargeability is not unqualified. But a debtor who resorts to Chapter 13 and *performs her obligations* under the Chapter 13 plan will have made at least some payments to creditors out of her income. And creditors in a Chapter 13 proceeding are given certain protections, including the right to object to the Chapter 13 plan. *See* 11 U.S.C. § 1325(b). If a creditor makes such an objection, the plan may not be confirmed unless the creditor's claim is paid in full or the plan directs that the full amount of the debtor's disposable income in a three-year period be paid to unsecured claims. *Id.* Then, upon the debtor's completion of the Chapter 13 plan and the entry of a discharge, a new six-year period of nondischargeability under Chapter 7 begins. *See* 11 U.S.C. § 727(a)(9). In these ways, the qualification on § 727(a)(8)'s lookback period posed by a Chapter 13 proceeding affords significant protections to creditors and works in harmony with the policies of § 727(a)(8). It is the filing *and dismissing* of Chapter 13 petitions without taking steps toward making payments under a plan that eviscerates the § 727(a)(8) period of nondischargeability. Tolling the six-year period during these aborted Chapter 13 petitions — regardless of whether they were deliberate attempts to avoid the six-year period of dischargeability or not — is therefore both necessary and appropriate to prevent the circumvention of § 727(a)(8).

Indeed, consider the perverse incentives the Bankruptcy Code would create if § 727(a)(8)'s period of nondischargeability were not tolled. One debtor who enters Chapter 13 and completes her Chapter 13 plan as intended by Chapter 13, making payments to creditors and receiving a discharge, must wait six years to obtain a Chapter 7 discharge. *See* 11 U.S.C. § 727(a)(9). Yet another debtor who enters Chapter 13 and then dismisses her case before completing her plan and receiving a discharge would be able to obtain a Chapter 7 discharge much sooner.

The majority finds tolling inappropriate because it would "allow all creditors to benefit from equitable tolling — even those that were not at all affected by the Chapter 13 proceeding that caused the tolling." *Ante* at 12. While the doctrine of equitable tolling generally applies on a case-by-case basis, depending on the equities of the respective parties, *see Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000), the tolling applied by the Supreme Court in *Young* was *cate-*

*gorical. See* 535 U.S. at 50-51 ("Tolling is in our view appropriate *regardless of petitioners' intentions* when filing back-to-back Chapter 13 and Chapter 7 petitions — *whether the Chapter 13 petition was filed in good faith or solely to run down the lookback period*") (emphasis added). I would apply tolling in the same manner here. Moreover, no unfairness lies in the fact that a later creditor would benefit from the full tolling of the period of nondischargeability. It is the creditor who suffers loss when the debt is discharged, and the extended period of nondischargeability confers only the unremarkable right to collect monies lawfully owed. As for the debtor, he obtained the benefit of the Chapter 13 proceedings, and the extended period of nondischargeability imposes only the burden of paying monies lawfully owed.

The majority also concludes that tolling is unwarranted in this case because "Congress has provided bankruptcy courts with several tools to remedy any 'loophole' of the sort feared by Tidewater." *Ante* at 12 (*citing* 11 U.S.C. §§ 105(a), 362(d), 109(g)(2), 349(a); 11 U.S.C.A. § 362(c)(3) (West 2007)). In so concluding, the majority effectively rejects the Supreme Court's decision in *Young*. For these same remedies, save the 2005 amendments to the Code which are inapplicable in this case, were also available in *Young*. Despite the existence of these alternative remedies, however, the *Young* Court deemed the filing and dismissal of a Chapter 13 petition a "loophole" and acted to close it.

Additionally, the remedies the majority points to are available only for cause, essentially a showing that the debtor is acting in bad faith. *See* 11 U.S.C. § 105(a) (permitting a bankruptcy court to take action "to prevent an abuse of process"); *id.* § 362(d) (directing a court, upon request of a creditor, to lift a stay "for cause"); *id.* § 109(g)(2) (prohibiting a person from filing a bankruptcy petition for 180 days after voluntarily dismissing a petition following a creditor's request for a lift of the stay under § 362(d)); *id.* § 349(a) (permitting the court, "for cause," to order that dismissal of a petition bars a later discharge of debts that were dischargeable in the dismissed petition). *Young*, however, diagnosed the loophole and conditioned tolling with reference to the effect that a Chapter 13 petition had on a creditor, not with reference to the motivation of the debtor: "Tolling is in our view appropriate regardless of petitioners' intentions . . . . In either case, the IRS

was disabled from protecting its claim during the pendency of the Chapter 13 petition." 535 U.S. at 50-51. Similarly, *even if Williams filed and dismissed each of her Chapter 13 petitions in good faith*, the fact remains that Tidewater Finance's statutory rights were diminished, being disabled from enforcing the nondischargeability of Williams' debt during the full six-year period provided for by § 727(a)(8).

Neither does the fact that Congress amended the Bankruptcy Code to limit a debtor's ability to benefit from the stay of § 362(a) upon filing a Chapter 13 petition preclude tolling of § 727(a)(8). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, §§ 302, 303, 119 Stat. 23. The majority's implicit presumption that Congress's expression of certain remedies excludes all others, *see ante* n.10, while valid in many statutory schemes, is invalid as to the Bankruptcy Code. Bankruptcy courts "'apply the principles and rules of equity jurisprudence,'" including the doctrine of tolling, and "Congress must be presumed to draft limitations periods in light of this background principle." *Young*, 535 U.S. at 49-50 (*quoting Pepper v. Litton*, 308 U.S. 295, 304 (1939)); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("This equitable [tolling] doctrine is read into every federal statute of limitation"). If anything, Congress's action to prevent abusive appeals to Chapter 13 proves the need to apply tolling in this case when only the bankruptcy court's equity power could protect Williams' creditors.

Finally, I would reject also the district court's holding that, assuming § 727(a)(8) is subject to equitable tolling, it would be inappropriate to toll the lookback period here "because Tidewater Finance voluntarily chose not to protect its rights during the period between Williams' Chapter 7 cases." Under the reasoning of *Young*, section 727(a)(8)'s lookback period was, as a categorical rule, tolled during the pendency of Williams' Chapter 13 petitions. This tolling does not depend on whether Tidewater Finance acted during the gaps of time during which Williams was not protected by § 362 stays. Such a rule would impose an impractical burden on creditors to monitor debtors' conduct. Since the lookback period was tolled during the pendency of the Chapter 13 petitions, Tidewater Finance acted within the tolled six-year period to enforce its right to nondischargeability.

I would accordingly reverse the order of the district court and remand this case with instructions to enter summary judgment in favor of Tidewater Finance.